JAMES H. KNOWLTON *vs.* THE BOARD OF SUPER-
VISORS OF ROCK COUNTY, Appellants.

APPEAL FROM CIRCUIT COURT, ROCK COUNTY.

Heard October 6.]                    [Decided November 9, 1859.

*Constitutional Law—Taxes—Injunction—Municipal Cor-
poration—Pauper—Poor—Quia Timet.*

The charter of the city of Janesville included within its limits a large quantity
of farming lands; and also provided, " that in no case shall the real and
personal property within the territorial limits of said city, and not included
within the territorial limits of the recorded plat of the village of Janesville,
or of any additions to said village, which may be used, occupied, or reserved
for agricultural or horticultural purposes, be subject to an annual tax to
defray the current expenses of said city, exceeding one-half of one per
cent., nor for the repair and building of roads and bridges, and the support
of the poor, more than one-half as much on each dollar's valuation shall be
levied for such purposes on the property within such recorded plats; nor
shall the same be subject to any tax other than before mentioned, for any
city purpose whatever." And the clerk of the city made out the taxes ac-
cording to the provisions of the charter, and the treasurer of the county sold
the unoccupied lots of the plaintiff for the non-payment of taxes so levied
not as on agricultural lands, though they did not lie within the limits of the
recorded plat of the village of Janesville, or any of its additions; held that
the taxes so levied on the lots are void, as being in violation of § 1, Art.
VIII. of the constitution of Wisconsin, which provides that " the rule of
taxation shall be uniform, and taxes shall be levied upon such property as
the legislature shall direct." And the court will enjoin the making of a
deed upon such a sale.

Courts of equity in this state will, by way of preventing the creation upon the
record of a cloud upon the owner's title, interfere, by injunction, to restrain
the execution and delivery of a deed of lands sold for taxes, which have
been illegally or improperly assessed.

Taxes are the burdens or charges imposed by the legislative power of a state
upon persons or property for public use; and the power to tax is one of the
essential attributes of sovereignty, inherent in, and necessary to the exist-
ence of every government; and this power would be unlimited, except by

the integrity and sense of justice of the legislature, but for constitutional re-strictions.

The theory of our government is, that socially and politically, all are equal, and that special or exclusive, social or political privileges or immunities cannot be granted, and ought not to be enjoyed; and, therefore, the burdens of supporting the government should be borne equally by all the individuals composing it, in proportion to the benefits conferred. To give permanency and force, and secure its rigid observance, limitations or restrictions were introduced into the constitution of this state.

The levying of taxes by the authorities of a county, city, or town, for their sup-port, is as much an exercise of the taxing power, as when levied directly by the state for its support. The state acts by the municipal governments, and their acts in levying taxes are as much the act of the state as if the state acted by its own officers.

The constitution of this state requires, as a rule in levying taxes, that the valu-ation must be uniform, and the rate uniform, or in all cases alike, or equal, operating alike upon all the taxable property throughout the territorial limits of the state, or municipality within or for which the tax is to be raised. And where the legislature prescribed a different rule, the act is a departure from the constitution, and therefore void.

The constitution has fixed one unbending, uniform rule of taxation for the state, and property cannot be classified and taxed as classed by different rules.

The provisions of the constitution that, " taxes shall be levied upon such property as the legislature shall direct," does not sanction a discrimination which provides for taxing a particular kind of property for the support of government by a different rule from that by which other property is taxed; for when the kind of property is prescribed, the rule of taxation must be uniform. All kinds of property must be taxed uniformly, or be absolutely exempt.

The support of the poor is a matter of common concern, and the expense there-of must be borne by the whole corporation, and therefore, where the charter of a city provided that certain property should pay but one-half as much upon the dollar's valuation as other property in the same city; held, that in that respect the provision is unconstitutional and void.

This was an action by the respondent against the appel-lants in the court below, to restrain the issuing and delivery of a tax deed, and to declare void the taxes assessed on the property of the respondent. The complaint sets forth that the respondent is the owner of several lots in the plat of the vil-lage of Rockport; and that in the year 1854, these lots were set

down and valued in the assessment roll of the city of Janesville, and taxed at sums varying from $1,28 to $3,41 a lot; that these lots were set down in the assessment roll with other lots and blocks in the city, and not in a separate part of the assessment roll; that they were, at the time of making such assessment vacant and unoccupied lots, not used for any purpose, but were kept for sale as village lots by the owner thereof; but they were not set down in the assessment as being owned by any person, nor as unknown or non-resident lands; that being assessed to no one, the taxes were not demanded from any person, nor were they paid, but the treasurer of the city returned the same as delinquent lands, and the taxes as unpaid to the county treasurer of Rock county, who afterwards, at a sale of lands for taxes, held on the second Tuesday of April, 1855, sold the lots for the amounts of the taxes and charges. That on the 16th of July, 1857, John V. L. Thomas caused a notice to be published in a newspaper in the county of Rock, which was continued for twelve weeks. The notice was as follows:

"Notice is hereby given, that the following described lands, situate in the county of Rock, and State of Wisconsin, were sold on Tuesday, the tenth day of April, A. D., 1855, the same being the second Tuesday in said month, for taxes, costs, and charges due thereon, for the year 1854, and that the same are still unredeemed. Now, therefore, unless the said lands shall be redeemed from such sale on or before the 10th day of April, A. D., 1858, being three years from the date of the several certificates of sale of said lands, the same, or such parcels thereof as shall remain unredeemed at the date last aforesaid, will be forfeited and conveyed to the purchaser thereof. The amounts stated below include the taxes, charges, and interest calculated to the last day of redemption." (Here followed the lists of lots and amounts due.) That Thomas, as such clerk, declares that he will execute and deliver deeds for all that shall remain unredeemed at and after the date named in the notice.

The plaintiff's complaint further showed, that by the charter of the city of Janesville, in the year 1854, it was, among other things, provided that "the rule of taxation in said city should be uniform: *provided,* that in no case should the real or personal property within the territorial limits of said city, and not included within the limits of the recorded plat of the village of Janesville, or of any addition to said village, which might be used, occupied, or reserved for agricultural or horti-

cultural purposes, be subject to an annual tax to defray the current expenses of said city, exceeding one-half of one per cent, nor for the repair and building of roads and bridges, and the support of the poor, more than one-half as much on each dollar's valuation as should be levied for such purpose on the property within such recorded plats, nor should the farming or gardening lands be subject to any tax other than before mentioned for any city purposes whatever;" that in said year there were a large amount in value of farming lands within the city, not being within any recorded plat. And that the clerk of the city of Janesville, in making out the tax roll for the city for the year 1854, and in ascertaining the amount of taxes to be assessed and levied upon and apportioned to each lot or parcel of land in the city, as well as personal property, calculated the amount of the taxes to be assessed and levied upon and apportioned to the lands and personal property not included within the limits of the recorded plat of the village of Janesville, nor of the additions thereto, and reserved and used for agricultural or horticultural purposes, for defraying the current expenses of the city at one-half of one per cent. on each dollar's valuation thereof; and for the repair and building of roads and bridges, and the support of the poor only one-half as much on each dollar's valuation as on lands and property included within such recorded plots, and at the same time he assessed and levied upon and apportioned to all property in said city, included within any recorded plot, one per cent. on each dollar's valuation thereof for defraying the current expenses of the city for the then current year. And that the village of Rockport is not an addition to the village of Janesville, but was surveyed, laid out, and platted into a town or village plat, and the lots and blocks thereon designated, long before the village of Janesville was laid out or surveyed, or platted into a town or village plat; notwithstanding which, the clerk made the same discrimination against the lots in assessing, levying, and apportioning taxes to the lots therein as in cases of the lots in the village of Janesville, or any of the additions thereto, and levying the same per cent. on the dollar's valuation in each case; and that it was under such provision of law, and of such unequal, and unjust, and ununiform rule of taxation that the taxes in the city of Janesville, for the year 1854, were levied and assessed, and the sales of said lots were made, and that Thomas declares that he will convey all of the lots which shall remain unredeemed after this day.

And this plaintiff alleges that the assessment roll, in so far as regards the lots, is illegal and void for not setting down the lots as being owned by some person, or as unknown or non-resident lands, as required by law. That the notice of the clerk of the board of supervisors is illegal and void in this, that it sets forth the lots as unknown, when in fact and in truth they were not so entered in the assessment roll. That the tax is illegal and void, and the sales and certificates are illegal and void, on account of the unequal and ununiform rule of taxation in this city, for the year 1854, on the property in the city, and for other reasons appearing on the record thereof.

The complaint then prayed for an injunction to restrain the defendants from making the deeds, &c. This complaint was sworn to by A. Hyatt Smith, as the agent of the plaintiff, and his affidavit also sets forth some other facts. Upon the complaint and affidavit the circuit judge granted a temporary injunction.

To this complaint the defendants filed a general demurrer, that it did not state facts sufficient to constitute a cause of action. And the circuit court decided that the demurrer of the defendants to the complaint must be overruled. From which the defendants brought this appeal.

*J. A. Sleeper*, for the respondent.

*D. Noggle*, for the appellants.

*By the Court*, DIXON, C. J. Section 2, of subdivision 5, of chap. 93, of the Local Laws of 1853, entitled "an act to incorporate the City of Janesville," provides that the common council of said city "shall annually levy a tax upon all the taxable property in said city subject to taxation, not exceeding one per cent., to defray the current expenses of the city; and also an additional tax of such sum as they may deem necessary for the repair and building of roads and bridges, and for the support of the poor." Beside the recorded plat of the village of Janesville and its additions, there was, by the act, included within the corporate limits of the city, a large quantity of the adjacent farming or agricultural lands. The own-

Knowlton vs. Supervisors of Rock County.

ers of these farming lands conceiving themselves too greatly and unequally burthened by taxation for the support of the new city government, applied to the legislature at the session of 1854, for a modification of the rule of taxation as prescribed in the section above quoted, when it was enacted, § 5, chap. 179, Local Laws, 1854, "that in no case shall the real and personal property within the territorial limits of said city and not included within the territorial limits of the recorded plat of the village of Janesville, or of any additions to said village, which may be used, occupied or reserved for agricultural or horticultural purposes, be subject to an annual tax to defray the current expenses of said city exceeding one half of one per cent., nor for the repair and building of roads and bridges and the support of the poor, more than one half as much on each dollar's valuation shall be levied for such purposes on the property within such recorded plats ; nor shall the same be subject to any tax for any of the purposes mentioned in § 3, of chap. 5, of the act of which this is amendatory; nor shall the said farming land be subject to any tax other than before mentioned, for any purpose whatsoever." Subsequently, in the same session, this section was amended, or intended so to be, (for by mistake undoubtedly § *four*, instead of § *five*, is named in the amendatory act,) as to make the last sentence read, "nor shall the said farming or gardening lands be subject to any tax other than before mentioned for any *city* purpose whatever." (See chap. 286, Local Laws of 1854.) In pursuance of these provisions the city clerk so made out the tax roll for the year 1854, that the taxes for defraying the current expenses of the city for said year were levied upon the real and personal property within the recorded plat and its additions, at the rate of one per cent. on each dollar of the assessed value, and upon the real and personal property without the plat and its additions, at the rate of one half of one per cent. of the assessed value. Several lots de-

scribed in the complaint in this action, and of which the plaintiff is now the owner, in the village of Rockport, which lies near to the village and within the corporate limits of the city of Janesville, and which the city clerk treated as an addition to the village of Janesville, apportioning to them the taxes, for city purposes, at the rate of one per cent. upon their assessed value, were returned by the treasurer of the city to the county treasurer, "delinquent," and by the latter sold to satisfy the taxes due and unpaid thereon, and certificates of sale were issued on the second Tuesday of April, 1855. In July, 1857, the defendant, Thomas, as clerk of the board of supervisors of the county of Rock, published, in the usual form, in a newspaper printed in said county, a notice, in which, after reciting that the said lots described in the complaint, were, among others, sold on the second Tuesday of April, 1855, for taxes, costs and charges, due thereon for the year 1854, and were still unredeemed; he stated that unless the same should be redeemed from such sale on or before the 10th day of April, 1858, (being three years from the date of the several certificates of sale,) the same or such parcels thereof as should remain unredeemed at said last mentioned date, would be forfeited and conveyed to the purchaser thereof. To perpetually restrain the execution and delivery of conveyance pursuant to such sales and notice, and to have the taxes and sales declared illegal and void, this action was commenced. Several questions are raised by the complaint as to the manner in which the lots in question were set down in the assessment roll, and the mode in which they were returned, and also as to whether the village of Rockport is to be considered as an addition to the village of Janesville, within the provisions of the statute, the same having in fact been laid out and platted before the village of Janesville was laid out and platted, which, under the view we have taken of the case, it will not become necessary for us to consider. By far the most important ques-

Knowlton vs. Supervisors of Rock County.

tion involved in the case is, whether the foregoing provisions of the charter of the city of Janesville are or are not in conflict with § 1, of Art. VIII, of the constitution, which is in the following words : " The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall direct." It was to this point that arguments of counsel were mostly directed, and for reasons existing outside of the present controversy, we were earnestly solicited by both sides to determine the case upon it. In view of these reasons, and because the question is fairly raised, we feel disposed to yield to the wishes of counsel, and shall therefore make it the only point of investigation. For this purpose the foregoing statement sufficiently embodies the facts alleged in the complaint. The complaint was demurred to by the defendants, for the reason that it did not state facts sufficient to constitute a cause of action. The circuit judge overruled the demurrer, and from his decision the defendants appealed. It has frequently been adjudged by this court that courts of equity in this state will, by way of preventing the creation upon the record of a cloud upon the owner's title, interfere by injunction to restrain the execution and delivery of a deed of lands sold for taxes, which have been illegally or improperly assessed.

It will be seen that these statutes, which were carried into effect in the assessment and levying of the taxes for the year 1854, provide for two distinct and unequal rates of taxation upon the same kinds of property for the support of the city government, the one an *ad valorem* tax of one per cent., upon the real and personal property within the recorded plat and its additions, the other an *ad valorem* tax of one half of one per cent., upon the real and personal property without the plat and its addition. The statutory requirements as to the levying and collection of taxes for the building and repairing of roads and bridges and the support of the poor, were also complied with. But since there is some difference of opinion and

conflict of authority, as to whether the word "taxation," in its ordinary sense, and as used in written constitutions, does or does not include assessments made for the purpose of building, repairing and improving roads, bridges and streets; and if such be the sense in which it is used in our constitution, whether or not it is modified or controlled by § 3, of Art. XI, of the same instrument; while all agree that it does extend to taxes levied for the purpose of revenue, whether such revenue be applied to the support of town, city, county or state government; and that in this respect it is not affected by § 3, of Art. XI, we propose to confine ourselves to that branch of the present case, which involves an inquiry into the power of the legislature to provide different rates of taxation upon property within the same municipal corporation for revenue purposes merely, leaving the other branch of the case to be settled in some one of the numerous cases in which it has been raised and so fully and ably discussed, at this present term.

Taxes are defined to be rates or sums of money assessed on the personal property of citizens by government, for the use of the nation or state; or, as the government sometimes exacts from individuals, services, as well as money, a more enlarged and correct definition would be, that they are burdens or charges imposed by the legislative power of a state upon persons or property for public uses. Taxation is the *act* of laying a tax, or imposing these burdens or charges upon persons or property within the state. It is the process or means by which the taxing power is exercised. The power of taxation is one of the essential attributes of sovereignty, and is inherent in and necessary to the existence of every government. In republics it is vested in the legislature, and in the absence of any constitutional restrictions, may be exercised by them, both as to objects and modes, to any extent which they may deem proper. It is then a matter of legislative discretion with which the courts can seldom or never interfere. In such ca-

ses the only guaranties against an abuse of this discretion, by harsh or unjust taxation, consists in the integrity and sense of justice of the legislature, their "responsibility to the people," and the power of the people, through the frequent recurrence of elections for the choice of new members to correct any evils which may have crept in. Such we believe has been the case with nearly all and is still with a majority of the states comprising the Union. In several, however, and among others, in our own, the people have seen fit, by constitutional provisions, to limit and direct this power, and thus to guard against its abuse. The theory of our government is, that socially and politically all are equal, and that special or exclusive, social or political privileges or immunities, cannot be granted, and ought not to be enjoyed. In consonance with this theory, that of taxation, whether as the subject of legislative action, judicial inquiry, or constitutional law, has always been, that the burdens of supporting the government should be borne equally by all the individuals composing it, in proportion to the benefits conferred, and that the tax payer receives for the money exacted, a just compensation by the protection afforded his person and property by the proper application of the tax. This principle of justice and equality which requires that each person should contribute towards the public expenses his proportionate share, according to the advantages which he receives, lies at the foundation of our political system; and, in our opinion, it was to give to it a greater permanency and force, and to secure its more rigid observance, that the section above quoted was introduced into the constitution. We have already said that all are agreed that the levying of taxes by the properly constituted authorities of a county, city or town government, for their support, is as much an exercise of the taxing power as when they are levied directly by the state for its support. There is no difference on principle or authority. It is all taxation for

Knowlton vs. Supervisors of Rock County.

the purpose of revenue or the support of government. The government of the state cannot be carried on except through the medium or agency of these municipal corporations or local sovereignties, and their acts in this behalf are as much the acts of the state, as if it directly performed them by means of its own officers.

We are of opinion that the rule of uniformity prescribed by the constitution, applies as directly to the question we are now considering, as it would were it a case where the legislature, in consideration of some supposed advantage which one portion of the state had over another, had levied upon such portion an *ad valorem* tax of double the amount which was levied upon the residue. For as each of these municipalities or local subdivisions of government are created, because it is believed that the interests and welfare of all the persons embraced within its territorial limits, will be thereby mutually and equally promoted, it follows that the burdens or charges for its support or revenue should be equally borne by all ; and as the rights and interests of all the owners of property are alike benefitted and protected by its operation, it also follows that when property is the object of taxation, it should all alike, in proportion to its value, contribute towards paying the expense of such benefits and protection. These are plain and obvious propositions of equity and justice, sustained as we believe by the very letter and spirit of the constitution. Its mandate it is true, is very brief, but long enough for all practical purposes ; long enough to embrace within it clearly and concisely the doctrine which the framers intended to establish, viz : that of equality. " The rule of taxation shall be uniform," that is to say, the course or mode of proceeding in levying or laying taxes shall be uniform ; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, &c.; and in order to have the rule

Knowlton vs. Supervisors of Rock County.

or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform. Thus uniformity in such a proceeding becomes equality; and there can be no uniform rule which is not at the same time an equal rule, operating alike upon all the taxable property throughout the territorial limits of the state, municipality or local subdivision of the government, within and for which the tax is to be raised. The legislature, in accordance with sound principle and the spirit of the constitution, have provided that property shall be taxed according to its value; but in the instances before us, have departed from them by providing that the property, real and personal, in one portion of a municipal corporation, throughout which it is supposed to be alike benefited, shall bear according to its value a larger amount of the public charges for its support than the property in the other portion. It may be as was claimed by counsel that the legislature acted unwisely or perhaps unjustly in including within the territorial limits of the city so much farming or agricultural land, but that is not a matter for judicial correction. Neither is it a matter for them to correct by discrimination in taxation, when the constitution has declared that there shall be no discrimination. The remedy lies in a repeal or an amendment of the charter.

It was contended in argument that as those provisions fixed one uniform rate without the recorded plats and another within them, thus taxing all the property without alike, and all within alike, they do not infringe the constitution. In other words, that, for the purpose of taxation, the legislature have the right arbitrarily to divide up and classify the property of the citizens, and having done so, they do not violate the constitutional rule of uniformity, provided all the property within a given class is rated alike.

The answer to this argument is, that it creates different *rules* of taxation to the number of which there is no limit,

except that fixed by legislative discretion, whilst the constitution establishes but one fixed, unbending, uniform rule upon the subject. It is believed that if the legislature can by classification thus arbitrarily and without regard to value, discriminate in the same municipal corporation between personal and real property within, and personal and real property without, a recorded plat, they can also, by the same means, discriminate between lands used for one purpose and those used for another; such as lands used for growing wheat and those used for growing corn, or any other crop; meadow lands and pasture lands; cultivated and uncultivated lands; or they can classify by the description, such as odd numbered lots and blocks, and even numbered ones, or odd and even numbered sections. Personal property can be classified by its character, use or description, or as in the present case, by its *location*, and thus the *rules* of taxation may be multiplied to an extent equal in number to the different kinds, uses, descriptions and locations of real and personal property. We do not see why the system may not be carried further and the classification be made by the character, trade, profession or business of the owners. For certainly this rule of uniformity can as well be applied to such a classification as any other, and thus the constitutional provision be saved intact. Such a construction would make the constitution operative only to the extent of prohibiting the legislature from discriminating in favor of particular individuals, and would reduce the people, while considering so grave and important a proposition, to the ridiculous attitude of saying to the legislature, " you shall not discriminate between single individuals or corporations, but you may divide the citizens up into different classes as the followers of different trades, professions, or kinds of business, or as the owners of different species or descriptions of property, and legislate for one class and against another, as much as you please, provided you serve all

of the favored or unfavored classes alike;" thus affording a direct and solemn constitutional sanction to a system of taxation so manifestly and grossly unjust, that it will not find an apologist anywhere, at least outside of those who are the recipients of its favors. We do not believe the framers of that instrument intended such a construction, and therefore cannot adopt it.

On the other hand, we are of the opinion that these are the very mischiefs which they intended to guard against and prevent. Single individuals have seldom acquired such an influence over the legislative mind as to secure to themselves the advantages arising from such legislation. There was little danger to be apprehended from that source ; but the combined influence and efforts of corporations and classes had. Such evils had been sorely felt in many of the older states ; it was against them and all other unjust discriminations, that the people intended to provide. It cannot change the principle, nor is it a source of consolation to the unfortunate individuals or classes whose money is thus extorted from them, that it is distributed by government among many, instead of being applied to the benefit of a single person or corporation. It is also contended that under the last clause of the section, "and taxes shall be levied upon such property as the legislature shall prescribe," this discrimination is sanctioned ; that by it the legislature have the right, in prescribing the property which shall bear the burdens of taxation, to specify certain kinds or species of property, and to entirely omit or exempt others; and that if they have the right to wholly exempt, they can do so partially, by saying that it shall pay a certain portion of the taxes, or that it shall be taxed at a certain rate lower than other taxable property, or that it shall pay a certain sum in lieu of all other taxation. Without stopping to consider, whether this clause does or does not confer upon the legislature a power of general or specific discrimination as to

what property shall be taxed, as is contended by some that it
does not, but conceding that it does, and that the legislature
may, by omitting to prescribe, exempt certain property from
taxation, and that its effect is the same as if it contained a
distinct grant of power to exempt, still we think this argu-
ment must fail; for the very moment that the legislature say
that a specific article or kind of property shall be taxed, or
shall contribute at all towards the expense of government, from
that very moment the first clause of the section takes effect,
and it must be taxed by the uniform rule. The legislature
can only "prescribe," and when they have done that, the first
clause of the section governs the residue of the proceeding.
There cannot be any medium ground between absolute ex-
emption and uniform taxation.

Upon the argument we were referred to, and much stress
was laid by the defendant's counsel as an authority sustain-
ing his positions, upon the decision of this court in the case
of *The Milwaukee and Mississippi Railroad Co. vs. The
Board of Supervisors of the County of Waukesha, and oth-
ers,* made at the June term, 1855. Upon examination of the
records and files of the court in that case, we can find neither
head note nor opinion. As a matter of fact, we are told that
none were ever written. We are therefore without any au-
thoritative information as to the points there determined, or
the views taken by the court; and under such circumstances,
we can hardly say that we should not consider the questions
there involved as still open. However, from the best informa-
tion we have been able to obtain, we are relieved from any
embarrassment growing out of the doctrines which it was
claimed by counsel were established by it; as we learn that
it was determined by the court that no question of the exer-
cise of the taxing power was involved in it. The written
opinion of the circuit judge in the same case will be found
reported in volume two, page 616, of the American Law Reg-

ister. The majority of the court have with great confidence come to the conclusion that so much of § 5, of chap. 179, of the Local Laws of 1854, as provides that the real and personal property within the territorial limits of the city of Janesville, and not included within the recorded plat of the village of Janesville, or of any of the additions to said village, which may be used, occupied or reserved for agricultural or horticultural purposes, shall in no case be subject to an annual tax to defray the current expenses of said city, exceeding one half of one per cent., whilst by a previously existing law, the residue of the real and personal property within said city is liable to a tax of one per cent. for the same purpose, is unconstitutional and void; and that therefore the judgment of the circuit court overruling the demurrer to the complaint in this action, must be affirmed. Inasmuch as the support of the poor is a matter of common concern, the expense of which is to be borne by the whole corporation, we may add that in that respect also the section is unconstitutional and void.

Judgment affirmed.

Cole, J., *Dissenting*. I think the order of the circuit court in this case, overruling the demurrer, for the reason that the charter of the city of Janesville, and the acts amendatory thereof, subject lands used for agricultural and horticultural purposes, which are within the recorded plat of the village of Janesville, and its additions, to a different rule of taxation from what the same description of lands are subject to, which are situated outside of these plats, but within the corporate limits of the city, must be reversed. Now, if the effect of these provisions be, as I suppose, to discriminate between the same kind of property as it happens to lie without or within those plats, in the imposition of taxes for the support of the city government, then the tax is not uniform upon such property through-

Knowlton vs. Supervisors of Rock County.

out the city limits. It may be said that it is not to be assumed
that there are any lands embraced within the plats of the vil-
lage of Janesville and its additions, which are used for agri-
cultural or horticultural purposes, but there may be some;
and I understand counsel so to state upon the argument. As
a general thing, farming and gardening lands are not em-
braced within the limits of cities and villages, but they have
been, to a great extent, in this state. The policy of the legis-
lature has been to extend the limits of municipal corporations
greatly, and lands are frequently embraced within them,
which are not wanted for the purpose of building, or to ac-
commodate the traffic and business of the corporation; but
which are for years devoted entirely and exclusively to agri-
cultural and gardening purposes. If lands used for such pur-
poses are so embraced, I cannot see any constitutional objec-
tion to subjecting them to a different rule of taxation, than the
other real estate which is devoted to the legitimate building
and business purposes of the city; but the same rule of taxa-
tion should be applied to them throughout the limits of the
corporation. And when this is done, I think the rule of uni-
formity in taxation prescribed by the constitution is attain-
ed. The same class of property is subject to the same rule
of taxation throughout the corporate limits.

  If, therefore, the charter had provided that all the lands
within the city limits, which were used or occupied for agri-
cultural or horticultural purposes, should not be subject to
as much tax on each dollar's valuation as might be levied
upon the other real estate of the city, for city purposes, I
should not have thought the charter came in conflict with
any provisions of the constitution. I think the case, then,
would have come strictly and fully within the doctrine laid
down in the case of the *Milwaukee and Mississippi R. R.
Co. vs. The Board of Supervisors of the county of Wauke-
sha*, decided by this court at the June term, 1855. That

case brought up for consideration the validity of chap. 74, General Acts, 1854, which required all railroad companies and plank road companies, which were, or should be organized within the state, to pay to the state treasurer, annually, for the use of the state, a sum equal to one *per centum* of the gross earning of their respective roads; and this tax the law declared should be ·in full of all the taxes of every kind upon the property belonging to said companies, or the stock held by individuals therein. And it was further declared, that it should not be lawful to levy or assess thereupon any other or further assessment or tax for any purpose whatever. The assessors of the various towns, in the county of Waukesha, assessed the property in their respective towns, belonging to the Milwaukee and Mississippi R. R. Co., as though no such law existed; and the railroad company filed a bill to restrain the collection of the tax, thus assessed, upon the ground that the same was unauthorized and void by the law of 1854. The bill was demurred to for want of equity, and the circuit court overruled the demurrer. An appeal was taken from the order overruling the demurrer, and the case was argued in this court with great ability. The constitutionality of the law was assailed, upon the ground that it was not passed by the legislature, as the constitution requires; the vote on its passage not being taken by yeas and nays; and also, because the act was in violation of the letter and spirit of section one of article eight of the constitution, which declared that " the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." This court, after as full an examination and as careful consideration as have been given to any case, which I have participated in deciding, sustained the law; the validity of which had been called in question. Though no opinion has been prepared, yet the points decided were written out by one of the members of the court, and, as he informs me, placed upon file with

Knowlton vs. Supervisors of Rock County.

the papers in the case. It appears that the paper containing these points has been misplaced, or cannot now be found. Still, I supposed the ground of that decision was well understood throughout the state. This court did not decide, as has been intimated, that the law of 1854 did not impose a tax in the first and proper sense of that term, but was a payment made to the state by the several corporations, to which the law applied, in the nature of a bonus or compensation for the exemption granted  This is certainly not the place to state, at length, the reasons which led the court to the conclusions arrived at in that case, even if I had the time to do so; and I shall barely allude, therefore, to the construction we then placed upon section one of Article VIII. of the constitution, to show that it would have been competent, within the principle of that decision, for the legislature to have provided that the farming and garden lands, within the limits of the city of Janesville, might be subject to a different rule of taxation for city purposes, than the other real estate therein situated.

The division of property into real, personal, and mixed, we considered a mere arbitrary division, which the legislature might or might not regard in the imposition of taxes. The legislature might adopt other classifications of property, imposing the tax upon those various classifications or kinds of property, and the rule of uniformity would be preserved. So long as the same rule of taxation was laid upon the same kind or class of property throughout the state, or the local division for which the tax was raised. For instance, the legislature might prescribe that all the railroad and plank road property in the state should pay one *per centum* of the gross earnings of their respective roads, in lieu of all other taxes, as was done by the act of 1854; and yet this law would be valid, because it applied to all of that kind of property in the state. It was a uniform rule upon that class of property

within the requirements of the constitution. So the legislature might provide that property invested in the business of banking should pay a semi-annual tax of three-fourths of one *per centum*, upon the amount of the capital stock of the bank, in lieu of all other taxes; as the bank law now provides; and still, such a rule of taxation upon this kind of property, would not be in violation of the constitution, since it applied to all the bank stock in the state. The legislature could prescribe the property upon which taxes were to be levied, and the constitution required that the rule should be uniform upon that property.

It is not to be denied that property belonging to plank road companies and rail road companies, and property invested in the business of banking, is subject to a different rule of taxation than what is applied to other property, while there is a large class of property, real and personal, wholly exempt from taxation. Now, if I correctly apprehend the construction which the majority of the court have given to the provision of our constitution, the decision in the case of *The Board of Supervisors of Waukesha vs. The M. & M. R. R. Co.*, is overruled, and the act of 1854 and the twentieth section of our bank law are invalid. For if there can be no uniform rule, which is not at the same time an equal rule, operating alike upon all the taxable property throughout the state or political division, within and for which the tax is raised, a rail road depot, or stock in a bank, within the city of Janesville must be taxed like other real and personal property, for city purposes. Again, if the legislature cannot classify property as the objects of taxation otherwise than it has been classified in the books, but must adhere to the division into real, personal and mixed, when it prescribes, as it does, in the charter of the city of Janesville, that taxes shall be levied upon the real and personal property of the city; by this construction, does not the provision of the constitution come in and re-

quire that the rule of taxation to be uniform must be an inflexible and unbending rule, applying to all the real and personal property within the city limits ? If the tax is laid upon the real estate, it must be upon all the real estate, according to its value. If upon personal property, then upon all the personal property, upon the same rule. Upon this view of the constitution, how can the legislature say that "all personal property exempt by law from execution not exceeding in value two hundred dollars," shall not be subject to taxation, when the personal property within the city is the object of taxation ? or that all the public or corporate property belonging to the county or city should not be taxed? It is said that the constitution establishes one fixed, unbending rule of taxation in furtherance of a principle of justice and equality, which requires that each person should contribute towards the expenses of government his share, according to the benefits which he receives. The idea of a revenue law which is equal in its operation, however beautiful in theory or desirable in practice, never has, and probably never will be realized. In prescribing the rule of taxation, I do not think the framers of the constitution were proceeding upon the idea that all property should be subject to taxation, and that a tax should be equal and uniform according to the value of property, for if they had so intended they would have incorporated a provision designed to accomplish that result, as has been done in Ohio, Louisiana and some other states of the Union. See *Municipality No. 2* (praying for the opening of Burton street) *vs. White, et al.*, 9 La. Ann. Rep., 446 ; *Cumming vs. Police Jury, &c.*, id., 503 ; *State of Louisiana vs. The Merchants' Insurance Co.*, 12 id., 802 ; *Exchange Bank of Columbus vs. Hines*, 3 Ohio State Rep., 1 ; *The City of Zanesville vs. Richards*, 5 id., 589 ; *The People vs. Coleman, et al.*, 5 Cal. R., 46.

The constitution says that the legislature shall prescribe

the property upon which taxes shall be levied, but does not restrain the discretion of the legislature in prescribing what property shall be subject to taxation. It only requires that the rule shall be uniform. The section consists of two clauses which operate upon and control each other. The legislature designates the kind, class or description of property upon which the taxes are to be levied, under the latter clause; and then the first clause of the section prescribes that the tax shall be laid upon the property so designated, by a uniform rule. This, as it appears to me, is the plain, obvious, rational construction of the section. If the object and scope of the section were to produce equality in taxation, the legislature should have been restrained from exercising any discretion in prescribing upon what property taxes should be laid.

I do not deem it necessary to pursue the discussion further. Not being able to concur in the construction given the constitution by the majority of the court, I deemed it my duty to state briefly my views as to the construction which ought to be adopted.

---

MILWAUKEE AND MISSISSIPPI RAILROAD CO. *vs.* BOARD OF SUPERVISORS OF THE COUNTY OF WAUKESHA, et al.

9            431
Note Case
60 LRA 361n
60 LRA 362n

The following is all which can be gathered from the record of this case:

This case was an appeal from the order and decree of the circuit court for th county of Waukesha. On the 24th of January, 1855, the complainants, the M. & M R. R. Co., filed their bill in the court below, to restrain the board of supervisors and others from collecting or attempting to collect a tax levied upon the railroad property. The bill set forth and showed that the complainants have a line of railroad leading from the city of Milwaukee to Prairie du Chien; that a part has been completed, and is now in use and operated by them, and has been used for the year past; that the line of road is located through the town of Eagle, in the county of Waukesha; that the boards of supervisors of the county of Waukesha, and town of Eagle, by their officers, have caused to be levied and assessed, a tax, for the year 1854, against said complainants, upon their road, track, depot, and fixtures, that is, on so much of the road as is located in and through the town of Eagle, being 7 miles and 182 rods, which was assessed at the valuation of $18,926,88, also the depot

Knowlton vs. Supervisors of Rock County.

and fixtures were assessed at the valuation of $737, making, in the aggregate, the sum of $19,663,83, upon which there was assessed and 'levied by the board of supervisors in the town of Eagle, by its officers, a tax for the following purposes; for town tax, the sum of $70,19; for county, $76,08; for state, $118,35; for school district tax, No. 1, the sum of $204,27; No. 9, $37,34; No. 3, $19,58; No. 8, $11,45, and for collectors' fees, $26,86; making, in the aggregate, the sum of $564,12. And that after the assessment and levying of the tax, a tax list, embracing the same, was made out by the officers of the town of Eagle, to which a warrant from the clerk of the town was attached, directed to John C. Snover, treasurer of the town ofEagle, directing him to levy and collect the tax, by distress and sale of goods and chattels of the complainants. And that by the statute in such case made and provided, in case the treasurer shall fail to collect the tax, as directed by his warrant, it becomes his duty to return the property to the treasurer of the county of Waukesha, as delinquent, whose duty it is, under the statute, to sell and dispose of the same, or such part thereof as shall be sufficient to satisfy the tax, together with the costs of sale.

And that under and by virtue of an act entitled, "An act taxing railroads and plank roads," approved April 1, 1854, it is made the duty of the complainants to pay to the treasurer of the state for the use of the state, on or before the tenth day of January in each year, a sum equal to one *per centum* on the gross earnings of their road, and which, by the terms of the act, is declared to be in lieu of, and in full of all the taxes of every name and kind upon the road, or other property belonging to the complainants. And the act further provides, that it shall not be lawful to levy or assess thereupon any other or further assessments or tax for any purpose whatever; that at the time of the levying and assessing of the tax, the act last aforesaid was in full force, and is still in force.

And complainants further show, that they are advised by counsel, and verily believe, that the tax, so as aforesaid levied and assessed upon complainants' road through the town of Eagle, is without authority in law, illegal, and absolutely void.

And further, that the tax list, with the warrant attached, was on 11th day of December, 1854, delivered to the treasurer of the town of Eagle, and that he has levied upon a large amount of the personal property of complainants, and threatens to proceed to collect the tax from the personal property, if sufficient amount can be found within the town of Eagle; that the complainants are running daily trains of cars through the town, which they fear will be levied upon by the treasurer, and their business interrupted and greatly injured. And that the board of supervisors have given out and threatened, that in case the county and state tax is not collected by the treasurer, that they will order it returned as delinquent, and will thereupon order and direct the county treasurer of Waukesha county, to sell the property herein before described, and execute a deed, or deeds, to the purchaser therefor; and complainants have good reason to believe that they will carry their threats into execution, and thereby greatly damage and inconvenience the complainants in their business, and by the sale of the property, although of no binding force or validity, as

Knowlton vs. Supervisors of Rock County.

against the complainants, yet nevertheless, the sale thereof will constitute a cloud upon their title thereto. The bill then asked for subpœna, and for an answer under oath.

And that the tax may by the court be decreed to be illegal and void, and that, in the meantime, the boards of supervisors of the county of Waukesha, the town of Eagle, and the treasurer of the town of Eagle, may be enjoined and restrained from collecting, or attempting to collect, the tax or any part thereof, and from levying upon the property of the complainants to make the amount of the tax, or from selling the road, track, or any part thereof in the town of Eagle, or the depot grounds or buildings, and the fixtures in the said town of Eagle, and from intermeddling with the property in any manner; and that the complainants may have such other and further relief in the premises as shall be agreeable to equity and good conscience.

On the 16th of March, 1855, the defendants filed their demurrer to the bill, and assigned the following causes:

1. Because, in and by the said bill, the complainants do not make a case cognizant in a court of equity. 2. Because the said bill discloses an interest in the subject matter thereof in the State of Wisconsin, and the attorney general of the state is a necessary party thereto. 3. Because the act of the legislature mentioned in the said bill, approved April 1, 1854, entitled, "An act taxing railroads and plank roads," is unconstitutional. 4. Because the taxes mentioned in the said bill appear thereby to be properly and legally assessed and levied. 5. Because the said bill is, in other respects, uncertain and insufficient; wherefore, the said defendants pray that the said bill may be dismissed, &c.

At the March term, 1855, this cause was submitted to the court, on argument of counsel on the demurrer filed therein, and on the 11th of June, 1855, the circuit judge made a decree overruling the demurrer, and also assigned the following reasons for his opinion:

The legislature of this state, on the first of April, 1854, passed an act requiring "all railroad companies and plank road companies, which were or should be organized within the state," to pay to the state treasurer annually, for the use of the state, "a sum equal to one *per centum* of the gross earnings of their respective roads." The act further declares that "this amount of tax shall take the place and be in full of all of the taxes of every name and kind upon said road, and the property belonging to said companies, or the stock held by individuals therein; *and it shall not be lawful to levy or assess thereupon any other or further assessment or tax for any purpose whatsoever.*"

Deeming this solemn act of the legislature unauthorized, the assessors of the town of Eagle, and of other towns in the counties of Waukesha and Milwaukee, returned the property of the complainants for the year 1854, and taxes were levied thereupon as if no such law existed.

The complainants filed their bill, and obtained a writ of injunction out of this court, temporarily restraining the collection of these taxes. To this bill the defendants interposed a demurrer.

Knowlton vs. Supervisors of Rock County.

The question now to be determined is, whether this law is valid or void, under the constitution of the state.    There is, I believe, but one section of the constitution applicable to the subject.    Section 1, Article VIII., is as follows :—" *The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe.*"

The defendants contend that under the law in question, "the rule of taxation" is *not* uniform.    1.  Because it establishes a rule of taxation for property belonging to companies mentioned, differing from the general rule applicable to the taxation of other property—it being a tax upon *income*, instead of a rateable tax upon *value*.    2.  Because it levies a state tax, and exempts from town, county, and district taxes.    3.  Because it establishes a new mode of levying taxes, differing from the general rule.  A point was also made that the attorney general ought to be a party defendant; but as that is a question of practice, and as I do not think the decree in this case will bar or affect the right of the state to collect the one *per centum* required to be paid to the treasurer by the act, I shall not discuss the question.

I am compelled to dissent from all the positions taken by the defendants.    Their error arises in part, I apprehend, from looking at the first clause of the section quoted, without due regard to the remainder.    The last clause qualifies and controls the first:  "Taxes shall be levied upon such property as the legislature shall prescribe."    No property can be lawfully taxed until the legislature authorizes and requires it to be done; and, of course, no property can be taxed when the legislature prohibits its being done.    The legislature is vested with the absolute power of declaring what property throughout the state shall be, and what shall not be subject to taxation.

This power has been variously exercised from the first organization of the state government, and almost every legislature has restricted or extended the quantity or character of property coming within the rule.    Large amounts of both real and personal property have been *wholly exempted* from taxation.    For instance, all property of the United States and of the state ; all property of the several counties, cities, villages, towns, and school districts, used, or intended for corporate purposes—personal property exempt by law from execution, not exceeding in value $200 ; the personal property of all incorporated literary, benevolent, charitable, and scientific 'institutions, and all such real estate belonging to them as shall be actually occupied for the purposes of their incorporation ; all houses of public worship and the lots on which they are situated, and the pews, slips, and furniture therein ; every parsonage, and all burial grounds, tombs, and rights of burial ; all public libraries, and the real and personal property belonging to, or connected with the same ; also the property of cemetery associations ; of the state and county medical societies ; and probably that of many other persons and corporate bodies which I have not noticed.

All this has been wholly exempted.    This exercise of power, on the part of the legislature, has not, to my knowledge, been questioned, and there is no doubt that to this long list the legislature might have added the property of all railroad and plank road companies.    And if it might exempt wholly, why not in part?    The major

power includes the minor. A general power to pardon, includes the right to annex conditions and to grant reprieves.

I see no reason why, upon this principle, the law in question, which operates as a partial exemption from general taxation, may not be valid. Regarding the annual payment to the state as a tax, as the defendants claim, why might not the legislature grant exemption in all other respects? The law, certainly, is not void, because it is not worse, and does not confer greater privileges upon these companies—to wit, total exemption.

But I regard the payment to the state, not as a tax, but as a *bonus* or *compensation* for the exemption granted. The whole substance and effect of the law is to release those companies absolutely from all ordinary taxes for ordinary purposes, upon the condition of an annual payment to the State. Had the legislature exempted their property from ordinary taxation, in consideration of their doing some service to the state—such as carrying troops or public stores free of charge—no one would call the service a tax, or question the validity of the exemption. It would be a privilege granted for a service rendered.

This is the precise character and effect of the act in question. The same principle runs through various laws. In respect to these same companies, because it was believed they would confer important benefits upon the public, by the construction of their roads, the right was granted to them, in the name and on behalf of the state, to take private property for their use, upon just compensation. For like reasons a law was, until recently, in force, authorizing individuals to erect mill dams upon their own lands, and thereby cause the lands of others to be overflowed, making such compensation only as the law provided for. The various cases of exemption before referred to, are but examples of the same principle—a privilege granted in consideration of some real or supposed benefit conferred upon the public or the state. Now the legislature, having full power to grant the privilege of exemption to these companies, has done it upon its own terms—that of paying to the state a portion of their annual income, and I see no ground of principle upon which to deny the power, or to question its rightful exercise. But allowing to the defendants the benefit of their own premises, in their broadest scope, I am still forced to the same conclusion. It is contended that the payment to the state being a tax, and the amount of such tax being regulated by the amount of annual income, while all other taxes are governed by the judgment of assessors as to the value of property, "the rule of taxation" is not "uniform."

Were the complainants alone subjected to this rule, I am not prepared to say the objection would be without foundation. But all rail road and plank road companies in the state are made subject to the same rule. It is doubtless a departure from the general law, and amounts to a declaration that this class of property shall have a rule by itself. But, is such a distinction compatible with the constitution? Many taxes for local and special purposes have been levied and collected without an assessment made in conformity to the general law. Almost every town, and especially almost every city and village in the state presents instances of this species of taxation for roads, streets and sidewalks, and other local improvements. The constitution of the Uni-

ted States declares that "all duties, imposts and excises shall be *uniform* throughout the United States." But no one has contended that the same duty, impost, or excise should be imposed upon every species of property. On the contrary, Congress' which has the sole power "to levy and collect taxes, duties, imposts and excises," require different classes of articles to pay different duties, some higher and some lower, regulating the duty on some kinds of property by the value, and on others by the quantity. Yet, I have never found a judicial decision holding that, because one class of property paid one rate of duty, and another class a different rate, the duties were not "uniform."

If upon the same class of articles there had been one rate required at New York, and a different rate at Boston or New Orleans, doubtless the constitutional provisions would have been violated. So in the present case. Had the legislature prescribed one rate of taxation for one town or county, and a different rate for other towns or counties, there could be but little doubt of its error. But so long as each class of property in every part of the state, and under like circumstances, is subjected to the same rule, it is difficult to see how the principle of the constitution is violated; much less how the law is so grossly and palpably wrong, as to warrant the interference of the courts, declaring it absolutely void. I see no constitutional objection to a law, (should the legislature see fit to pass one) exempting all sheep in the state from taxation; or a law requiring all woolen or cotton factories to pay to the State Treasurer one per centum of their gross earnings, as a commutation for all ordinary taxes. Yet, should the legislature, by law, declare the sheep of one man exempt, or authorize one manufacturing company to pay a bonus, in lieu of general taxation, there would be good reason for holding that the rule was not uniform, and that such law was void.

Under every view which I have been able to take of this case, I cannot but regard the act of April 1st, 1854, (whether its provisions be wise and equal, or otherwise) *as within the constitutional power of the legislature,* and therefore *valid.*

The defendants' demurrer must be overruled.

LEVI HUBBELL, Circuit Judge.

From which ruling the defendants appealed to this court.

*E. G. Ryan,* for appellants.

The bill in this case was filed to avoid taxes upon the property of the complainants, situate in Waukesha county, assessed in the ordinary mode for town, county, state and school purposes, under the general tax laws of the State. The complainants found their claim to exemption from ordinary taxation, upon the provisions of chap. 74 of the general acts of 1854; which act in terms so exempts them, substituting a state tax of one per cent. of their *gross earnings* for all other *taxes.* The principal question in the case is the constitutionality of that act. It is very desirable to obtain a decision of the court upon that question. It is, therefore, not proposed to discuss the questions whether a bill in equity will lie to avoid or restrain a tax; or whether to the bill seeking to restrain a state tax, the Attorney General is not a necessary party. Without waiving these questions, it is proposed to confine

this brief to a consideration of the constitutional power of the legislature to enact the provisions of chap. 74 of 1854, in form and substance.

1st. It is contended that the act in question is unconstitutional and void upon two general grounds. The act was not passed by the legislature, as the constitution requires. Section 8 of Art. VIII. of the constitution provides that "any law which imposes a tax or commutes a claim of the state, shall be passed by yeas and nays, which shall be duly entered on the journal of each house; and that three-fifths of all the members elected to each house shall be necessary to constitute a quorum for the passage of such a law." This constitutional rule was wholly neglected in the passage of the act in question through each house.

The act which is now chap. 74 of the general acts of 1854, was bill number 52 assembly, of the session of 1854. It was introduced into the assembly under the title of "a bill to exempt plank roads from taxation," and referred to the judiciary committee, on the 21st of January, 1854. Ass. Jour. 80. On the 21st of March, that committee reported a substitute for it, entitled "a bill to provide for taxing rail roads, plank roads and telegraph lines." Ass. Jour. 610. This substitute, with the altered title, was passed by the assembly, under a suspension of the rules, without yeas and nays, and without any entry upon the journal to indicate a quorum of three-fifths, on the 25th of March. Ass. Jour. 681–2.

The bill was transmitted to the Senate on the 27th of March. Sen. Jour. 533. It was read the first and second times on the same day, and referred to the committee on state affairs; Sen. Jour. 539; reported by the committee without amendment on the 30th of March; Sen. Jour. 580; amended on the same day, among other things, by striking out from the bill and its title all relating to telegraph companies, and then read a third time and passed, under a suspension of the rules, without yeas and nays, and without any entry upon the journal to indicate a quorum of three-fifths. Sen. Jour. 601–2.

The bill thus amended was returned to the assembly on the 31st of March; Ass. Jour. 765; and the amendments of the senate concurred in, on the same day, the vote upon the amendments being taken by yeas and nays, three-fifths voting; but no further vote being taken upon the passage of the bill. Ass. Jour. 769–70. On the same day the house notified the senate of its concurrence in the amendments; Sen. Jour. 615; and the bill thus passed was appropriately approved by the Governor, in hot haste, on "All Fools' Day."

It seems almost unnecessary to cite authorities to the principle that the acts of a legislative body, as well when it acts in disregard of the forms and solemnities imposed by the constitution, as when it exceeds the limits of constitutional restraint, are void. The court is, however, referred to the following cases: *People vs. Purdy*, 2 Hill, 31; *Purdy vs. People*, 4 Hill, 384; *De Bow vs. People*, 1 Denio, 9; *Commercial Bank vs. Sparrow*, 2 Denio 97. See, also, *Morris vs. The People*, 3 Denio, 381; *Greene vs. Graves*, 1 Doug., 351; *Farmers and Mechanics Bank vs. Troy City Bank*, 1 Doug., 457; *State vs. McBride*, 4 Mo., 303.

As this act, beyond controversy, imposes a tax, it was not constitutionally passed; and all its provisions are indubitably void. For the constitution requires the pas-

sage *forma et modo,* not of the particular provision or section, imposing a tax, &c., but of the entire body of any law which imposes, &c. And as this provision extends to any law which releases, discharges or commutes a claim or demand of the state, all the provisions of the act in question releasing the complainants from the general rule of taxation and so repealing the general laws, are as much subject to the objection, as that part imposing the special tax.

If these views should be sustained by the court, they decide the controversy between the rail road company and Waukesha county. But the complainants may object, on the authority of some New York cases, that the present appeal cannot be determined, upon this objection to the validity of chap. 74, of 1854. The provision of the constitution of New York, of 1821, Art. 7, § 9, was in these words : "The assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes, or continuing, creating, altering, or renewing any body politic or corporate."

A marked distinction will be perceived between this provision and the provision of our constitution under consideration. The New York constitution requires, in certain cases, the assent of two-thirds of the members of each house, but prescribes no mode in which such assent shall be evinced or ascertained, thus leaving it a matter *in pais.* Our constitution requires the action of three-fifths of the members of each house, in a vote by yeas and nays, to be entered on the journals, prescribing how the proper passage of acts coming within it shall be evidenced and ascertained, thus making it a matter of record. The Revised Statutes of New York, vol. 1, 149, undertook to remedy the difficulty by providing that no bill should be deemed passed by two-thirds, unless so certified by the presiding officer of each house, and that the Secretary of State should certify on every bill, when the same become a law, and that his certificate should be conclusive, &c. Under these provisions of constitutional and municipal law, some confusion has arisen in the decisions of New York, as to the mode of presenting to the court the question of the assent of two-thirds of each house to an act coming within the constitutional provision. In *Thomas vs. Dakin,* 22 Wend., 9, it was assumed by the counsel and the court, that the objection must be pleaded by the party alleging it, but the question received no consideration in the case. *Warner vs. Beers,* 23 Wend., 103, went upon the ground that the statute in question in that case was not within the constitutional provision ; but some members of the court uttered dicta confirming the view assumed in *Thomas vs. Dakin. Hunt vs. Van Alstyne,* 25 Wend., 605, was also decided upon a different point; but Chief Justice Nelson intimates his opinion that the certificates of the presiding officers of the passage of acts by the constitutional vote, are conclusive, *and may be looked to* by the court to determine the validity of such acts. *Thomas vs. Dakin* and *Warner vs. Beers,* are commented on in *The People vs. The Assessors of Watertown,* 1 Hill, 616, and explained in a manner showing that the decisions of the court in those cases had no bearing upon the question involved in this appeal. The next case was *The People vs. Purdy,* already cited, which seems to overrule the dicta in *Thomas vs. Dakin* and *Warner vs. Beers.* Next follows *De Bow vs. The People,* already cited,

substantially adopting the dictum of the Chief Justice in *Hunt vs. Van Alstyne*. The next case is *Gifford vs. Livingston*, in the court of errors, 2 Denio, 380, which also turns upon a different point, but reviews the previous decisions, discredits the dictum in *Thomas vs. Dakin*, and shows that it had never been judicially determined that the court could not look behind the act to see if it were constitutionally passed. Then comes *The Commercial Bank vs. Sparrow* in which it is decided that the court can ascertain by an inspection of the original act, whether it was constitutionally passed. Thus the weight of these authorities is with the appellants on this question; and whatever dicta in the cases lean the other way, under a constitutional provision which left the matter *in pais* are not in point under a constitution which provides record evidence for the inspection and information of the court.

Under the new constitution of New York, in this respect very similar to our own, the same question was raised in *The People vs. The Supervisors of Chenango*, 4 Seld., 317. The court held the act in controversy in that case, not to be within the constitutional provision requiring the presence of three-fifths of the members, but to be within the provision requiring the vote to be taken by yeas and nays, and to have been constitutionally passed by yeas and nays. But Judge Willard, upon a total misapprehension of the previous cases, says that it is necessary to plead the non-compliance with the constitution; and adds, that the constitutional safeguard requiring the yeas and nays to be entered in the journal, is only directory to the legislature.

The constitution delegates the legislative power to be exercised in a certain manner by the two houses of the legislature, subject to a qualified veto power in the Governor. Chapter 74, laws of 1854, was not constitutionally passed by either house of the legislature; that is, was not passed by the legislature at all. If passed at all, it has been passed by the Governor, the Secretary of State, and the state printer. And it is an extraordinary position that the court cannot look into the constitutional record for the purpose of determining whether certain printed pages contain the constitutional legislation of the two legislative bodies; or something never constitutionally acted upon by them, signed by their presiding officers in mistake, approved by the Governor in mistake, and interpolated among the statutes by the Secretary of State in mistake. The court is presumed to know the law; the court must hold this act to be the law, or not to be the law. And if the court cannot look behind the act, it must conclude the chapter of mistakes, by mistaking for law, what it knows not to be law, until an issue shall be made and tried, to determine whether it be law or not law.

2. It is contended that the act in question is in violation of the letter and spirit of the constitutional provision, "the rate of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe."

Taxes are defined to be burthens or charges imposed upon persons or property for the support of the state. 2 Story's Const., ₰ 947; 6 Barb. Sup. Ct., 215. The government of the state is carried on not only through the direct action of the state, but also through the machinery of municipal corporations. And all burthens or charges for the support of counties, towns, cities and villages, are as much taxes within the meaning of the constitution, as taxes going directly to the treasury of the state.

In pursuance of the constitutional provision the legislature, has provided a uniform rate of taxation, *ad valorem*, upon real and personal property throughout the state, for the support of the government of the state and of the several counties, towns, cities, and villages, in which such property is situated. To this rule of taxation the act of the legislature under consideration, is designed to operate as an exception, by withdrawing property of the corporations to which it relates, from the general rule of taxation. It exempts such property from all taxation by local, municipal corporations; substitutes for the general rule of state taxation *ad valorem*, a special income tax.

There are three principal, general classes of direct taxes: capitation, having effect solely upon persons; *ad valorem*, having effect solely upon property; and income, having a mixed effect upon persons and property. Capitation taxes are manifestly abolished by the provision in our constitution. The rule shall be uniform; taxes shall be levied upon property; and there can be no uniformity between taxation of polls and taxation of property. Without the constitutional restriction the legislature could tax persons or property, or both; but the constitutional provision being designed as a restraint upon the legislative power, must be interpreted as abolishing capitation taxes, by the rule, *expressio unius, exclusio alterius*. The same reasoning will show that income taxes are equally abolished by the constitution. There can be no uniformity between a tax upon the value of property and the income of persons. There can be no uniformity between a tax upon the value and a tax upon the income of property. There is no uniform relation between property and its income. Income is not a necessary incident of property. And the constitution, to give effect to the uniformity of the first clause of the section, requires taxes to be laid upon property, not on the income of property.

These provisions of the constitution are not arbitrary, but are designed to carry out rules of political justice, antecedent to all written constitutions. The sovereignty appropriates private property to public use by the legitimate exercise of either of the two sovereign rights of taxation and of eminent domain. These rights rest substantially on the same foundation. and presuppose compensation for property taken in either way. Taxation takes property from individuals for their respective shares of the public burthens; and the tax payer receives compensation in the protection which government affords to him. The right of eminent domain takes property from individuals as so much beyond their respective shares of the public burthens; and special compensation is therefore made for what is so taken, upon the principle that the sovereign is a debtor to each individual for all that he contributes beyond his ratable share. *The People vs. The Mayor of Brooklyn*, 4 Comst., 419; *Opinion of the Judges*, 4 N. Hamp., 565; *People vs. The Mayor of Brooklyn*, 6 Barb. Sup. Ct., 209; *People vs. The Mayor of Brooklyn*, 9 Barb. Sup. Ct., 535, 545.

There are principles of political justice entering largely into the theory of republican government, and underlying and controlling all the relations of property between the state and its citizens. Equality of contribution to the public burthens is essential to equality of social and political right. A just exercise of the power of taxation implies an equal rule of taxation, exacting from each person or thing taxed

a proportionate share only of the public support. This is the true reason upon which rests the distinction between the power of taxation and the right of eminent domain. If the sovereign could exact, under the right of taxation, more than a proportionate, ratable share of the expenses of government, it could practically violate the right to compensation under the power of eminent domain; and the distinction between the two powers would be arbitrary and ineffectual.

Universally recognized as these are as principles of American law, they have been so often defeated by judicial deference to the legislative enactments, that, independent of express constitutional enactment, it might well be doubted whether the legislative power would be confined to a just exercise of the right of taxation by equal and uniform rules. And the obvious effect of § 1, Art. VIII, of our constitution, is to restrict the legislative power to a compliance with these general principles of public justice, which precede and enter into all written constitutions.

The section contains two clauses, which, being in *pari materia*, must be taken together and construed as acting upon and controlling each other. By the former clause, "the rule of taxation shall be uniform." This is equivalent to a constitutional declaration of the principle asserted by the supreme court of New York to exist independent of all constitutional provision; "legitimate taxation is limited to the imposing of burthens or charges, for a public purpose, equally upon the persons or property within a district, &c." The rule of taxation is not merely the *rate* of taxation, it is the *law* of taxation. The uniformity of the rule requires not only a uniformity of rate, but also a uniformity of object. These are dependent principles. The justice of the rule rests upon the double uniformity of rate and object. A uniform rate without a uniform object, and a uniform object without a uniform rate, would alike leave the equality of taxation to legislative discretion. The end to be attained by exacting of every subject of taxation its equally proportionate share of the public burthens, cannot rest upon uniformity of rate or uniformity of object, but must rest upon both. A uniform rule is a general principle. To be uniform, it must be a rule without exception, distinction or partiality. Whatever may be the principle or object of taxation, the rule of taxation must be universal and equal.

It is immaterial in this aspect whether taxation of property be *ad valorem*, or upon the income. The rule in either case must be uniform in rate and object; must be universal in its application and equal in its exaction. But the principle of taxation, whatever it be, must be one entire principle. If taxation for the same period and object, whether the rate be uniform or not, be levied upon the value of some property and upon the income of other property, the rule ceases to be uniform. Uniformity of rule is impossible in a mixed principle of taxation. Value is an attribute of all property, income is not. And a mixed principle of taxation would not only operate unequally upon property which it might reach, but would have a tendency to exempt unproductive property from taxation.

The second clause of the section provides that "taxes shall be levied upon such property as the legislature shall prescribe." This clause is, like the former, not a grant of power, but a restraint of power. The word "taxes" necessarily means all taxes, or it means nothing as a restraint. If the clause leaves it to the discretion of

Knowlton vs. Supervisors of Rock County.

the legislature to levy taxes, otherwise than on property, it is wholly nugatory, and amounts to a useless declaration that property shall be taxed whenever the legislature shall prescribe.

The former clause having established the uniformity of the rule of taxation, the latter clause had no function left, except to establish the object of taxation. Independent of it, the right of taxation could be exercised either upon persons or property. The clause prohibits personal taxes and limits the right of taxation to property. The provision is that such property shall be taxed as the legislature shall prescribe. This is not an arbitrary discretion in the legislature. It does not vest in them an arbitrary power to tax and to exempt from taxation. Independent of the principles of public justice requiring an equal exercise of the power of taxation and of the controlling effect of the former clause upon the latter, it may well be questioned whether the language of the second clause by itself would confer such a power.

The clause establishes the rule of taxation to be upon property. It abolishes all personal rules of taxation. The language of the clause is, " such property as the legislature shall prescribe," and not " the property of such persons." In taxing property as such, instead of persons, no notice can be taken of the proprietors, or distinction made between different proprietors or classes of proprietors. It is the property, not the proprietor, which is the subject of the tax. The tax must operate on things, not persons. And the legislature, by force of this clause alone, have no power to subject the same kinds of property of different proprietors to a different rule of taxation. A rule of taxation depending upon the persons or classes of persons owning the property, as well as upon the property taxed, would establish, not a property tax, but a mixed property and personal tax.

The language of the clause is, " such property as the legislature shall prescribe," not " what property." The latter phrase might imply a power of specific discrimination; the phrase used implies a general rule. It is to be presumed that in restraining the legislative power, the constitution prescribes general principles or rules; and in delegating specific powers to the legislature, subjects the legislative authority to general principles and rules, and not to arbitrary or partial discretion. The freedom of our institutions and the personal equality of our citizens rests not a little upon the observance of this rule. And this is the true rule of enlightened interpretation. Where a constitutional provision is susceptible of two constructions, the one conferring an arbitrary, unequal and unjust power on the legislature, and the other a just and uniform rule of power, a liberal and enlightened court will feel compelled by those principles of public justice upon which all constitutional enactments should rest, to adopt the broad, liberal and just construction. And the only true construction of the clause under consideration is, that the legislature shall prescribe, by general rule, the kind of property to be taxed. All property is real, personal, or mixed. Under this clause the legislature may undoubtedly prescribe which of these kinds of property shall be taxed or exempted from taxation. This is the true boundary of the discretion vested in the legislature, by a sound and just construction of the second clause of the section.

The latter clause has been hitherto considered without reference to the controlling

effect of the former clause. But the first clause of the section operates upon the lat-
ter, and the latter must be so construed as to give full effect to the former. The first
clause in the section gives no discretion. "The rule of taxation shall be uniform."
Thus considered, the construction of the second clause is in no doubt. Taxation
shall be upon property and by a uniform rule. The legislature may direct the prop-
erty to be taxed, but such direction must be consistent with a uniform rule of taxa-
tion. The discretion given to the legislature by the one clause must be controlled
by the clause which gives no discretion to the legislature. It has been already seen
that the uniformity of the rule is as much in the uniformity of the object, and in the
uniformity of the principle as in the uniformity of the rate. All discretion to dis-
tinguish under the latter clause, between specific properties of the same kind, or to
establish different rules of taxation, would wholly defeat the uniformity of the rule
under the former clause. The legislative discretion in the property to be taxed
must be exercised within the boundaries of a uniform rule. Construed by the light
of the first clause taxation shall be upon such property as the legislature prescribes,
so that in the language of Chief Justice Robertson, of Kentucky, 5 Dana, 31, " it
must bear equally according to value on all the property of the same kind owned by
every citizen." " A common burthen should be sustained by common contributions,
regulated by some fixed general rule, and apportioned according to some uniform
ratio of equality."

In the spirit of the double provision, taxation must be by a general rule. The
word "rule" implies a general rule, a law, not an arbitrary or partial distinction.
And any other construction of the double provision, would not only destroy all sem-
blance of uniformity in the rule, but would lead to the most absurd, unjust, and
hideous conclusions. Thus the legislature might tax some property *ad volorem*,
some on the income, some specifically : they might apply the different principles of
taxation to different persons, and to different localities : they might exempt the prop-
erty of one, and tax the same property of another : they might establish a different rule
between natural persons and corporations : they might apply these distinctions to
different classes of persons, political, religious, or national : they might distribute the
public burdens, by arbitrary distinctions of all kinds, according to their mere voli-
tion.

The very act under consideration does some of these things. It subjects the prop-
erty, real and personal, of the corporations to which it relates to a different rule of
state taxation from all other property of the same kind in the state: it exempts
their property from all local taxation; and it exempts the property of the stock-
holders in those corporations from all taxation. Its operation will be to with-
draw from all equality of contribution to state expenses and from all contribu-
tion to county, town, city, and village expenses, millions of favored property.
The construction of this clause of our constitution has been hitherto considered, for
convenience, without particular reference to authorities. The court is cited upon the
questions involved, to the following cases : *People vs. The Mayor of Brooklyn,* 6
Barb. Sup. Ct., 209 ; *People vs. The Mayor of Brooklyn,* 9 Barb. Sup. Ct., 535 ; 4
Comst. 419 ; 4 N. Hamp. R., 565 ; Lunt's case, 6 Greenl., 412 ; *Mayor of Baltimore*

*vs. Baltimore & Ohio Railroad Co.*, 6 Gill, 288; *Crow vs. The State*, 4 Mo. 237; *Trustees vs. McConnel*, 12 Ill., 138; *Sutton vs. The City of Louisville*, 5 Dana, 28; *City of Lexington vs. McQuillan*, 9 Dana, 513.

The history of this section of the constitution aids our construction. In the rejected constitution the provision stood thus: "All taxes to be levied in this state, at any time, shall be as nearly equal as may be." In this form, also, it was reported to the second convention. Journal 113. From this vague form it was changed by the convention to its present shape. And it is impossible to examine the Journal of the convention, with what meagre light the very imperfect report of the debates affords, without being aided in the conclusion that the construction here given to the section, as the necessary construction of the language used, was the purpose of the constitution.

The act of the legislature under consideration, withdraws from the general rule of taxation "the several railroad and plank road companies now organized, or hereafter to be, in this state, and completed in whole or in part, and being operated or used, and the roads and other property belonging to said companies, and the stock held by individuals therein;" and imposes thereupon a tax of "one per cent. of the gross earnings of their respective roads, in the place, and in full of all taxes of every name and kind." These provisions still leave subject to the ordinary rule of taxation, the property of all railroad and plank road companies not operated or used. The non-productive companies are subject to the ordinary rule of taxation; the productive companies are the favored ones. The non-productive property of the former class remains subject to the ordinary rule of taxation; the non-productive property of the latter class is exempt from all taxation. The non-productive stock in the one class is subject to taxation; the productive stock in the other is exempt from taxation.

It is confidently submitted to the court that the *act is* unconstitutional and void, and that the corporations to which it purports to relate, are still subject to the general law of taxation, for the following reasons: 1. Because the act assumes to tax railroad and plank road companies, by a special rule of taxation, differing in rate from the general rule of taxation upon all other property. 2. Because it assumes to tax the income of such companies, not their property, *ad valorem*, nor according to the rule of all other taxation in the state. 3. Because it exempts from taxation all property of such companies not producing an income. 4. Because it exempts all property of such companies from county, town, city, and village taxes. 5. Because, even if it be within the power of the legislature to discriminate in the rule of taxation between the property of such companies, and the property of other persons, the act makes an unequal and unjust distinction between such companies and their property, and does not establish a uniform rule even as to them.

3. In the foregoing points it has been assumed that the act in question imposes a tax. It appeared to be too plain a proposition for argument. Since the foregoing points were in manuscript, it has been ascertained that the complainants purpose to rely upon the following extraordinary proposition in the opinion of the court below: "But I regard the payment to the state, not as a tax, but as a *bonus* or *compensation* for the exemption granted. The whole substance and effect of the law is to release

those companies absolutely from all ordinary taxes for ordinary purposes, upon the condition of an annual payment to the state."

The act itself sufficiently refutes this notion. Its title is "An act *taxing* railroads and plank roads." The second section provides that the corporations to which it relates, shall pay to the State Treasurer for the use of the state, a sum equal to one per cent., &c., "which amount of *tax* shall take the place, and be in full of all the *taxes* of every other name and kind, &c., and it shall not be lawful to levy or assess thereupon any *other* or *further* assessment or *tax* for any purpose whatsoever." The fifth section gives the State Treasurer power to collect this tax.

But apart from the plain letter and spirit of the act, it is useless to pretend that its provisions are a composition between the corporations to which it relates and the state. These corporations are no parties to the act. They have no election between this special rule of taxation and the general rule. The act, if of any force, is obligatory upon them without their assent.

The act provides for the compulsory payment of a proportion of the property of the corporations to the state, in support of the expense of the state. As has been seen already, the state has only two powers by which it can take private property for public use: the one, the right of eminent domain; the other, the power of taxation. *People vs. Mayor of Brooklyn*, 4 Comst., 419. And the complainants have no middle ground upon which to rest this compulsory taking of their property in support of the public burdens. The act must rest upon one of these powers. It is, of course, idle to pretend that it rests upon the right of eminent domain; and such a pretence would not aid its constitutionality. It rests upon the power of taxation, "exacting money from them, as and for their respective share of contribution to the public burdens;" "operating upon a class of persons in a community, by a rule of apportionment." *Union Bank vs. State*, 9 Yerg., 490; *Lunt's Case*, 6 Greenlf., 412.

*Finch & Lynde,* for respondent.

1. An act of the legislature is never to be declared unconstitutional, except in a clear and plain case, and where there is an entire freedom from doubt. *Ex parte McCollum*, 1 Cowen, 564; *Dartmouth College vs. Woodward*, 4 Wheat., 625; *Cooper vs. Telfair*, 4 Dall. 14.

2. Sections one and eight of Article VIII. of the constitution of this state, are restrictive of the powers of the legislature, and are not to be extended beyond the plain and obvious import of the words. 1 Story's Com. on Con. U. S., 382, ch. 5, 2 400; Bacon's Abr. Statute, I, 6, 7, 8, 9; Vattel, Book 2, ch. 17, 22 292, 308, 281, 277; Ruth. Inst., Book 2, ch. 1; Dwar. on Statutes, 749; 1 Black. Com., 59, 60; *The People vs. Utica Ins. Co.*, 15 John, 358; 1 Kent's Com., 461-2, 3d ed.; *Melody vs. Read.* 4 Mass., 471: *McQueen vs. Mid. Manuf. Co.*, 16 John R., 7; Dwar. on Statutes, 729; *King vs. Hardy*, 6 T. R., 286; 6 B. & C., 475; 11 Peters, 420.

3. In ascertaining the import of the words of the constitution, the intention of its framers is to control, in every respect. The cases last referred to, also, Plowden, 18; *People vs. Morris*, 13 Wend. R., 525; *Warner vs. Beers*, 23 Wend. R., 103.

Knowlton vs. Supervisors of Rock County.

4. The requisite constitutional steps in passing an act which has been published in the statute, must always be presumed to have been taken until the contrary shall have been clearly shown. Smith's Commentaries, 944; *Thomas vs. Dakin*, 22 Wend. R., 9; *Warner vs. Beers,* 23 Wend. 103 (Opinions of Ch. Justice, the Chancellor, and Senator Verplank.)

5. The inference of law is, that the constitutional requirements were observed in the passage of the law; and the statute book, or the original enrolled bill, is the only guide for the courts. They cannot go behind the law to look at the journals, no more than they can go behind the journals to ascertain whether the legislature was constitutionally organized, or to show by proof that it was illegally constituted. *Rex vs. Arundel*, Hobart's R., 110, *Thomas vs. Dakin*, 22 Wend. R., 9; *Warner vs. Beers*, and *Borlander vs. Stevens*, 23 Wend. R. 103; *The People vs. Purdy*, 2 Hill, 31; *S. C.*, 4 Hill, 384–390; *De Bow vs. The People*, 1 *Denio*, 9; *The Commercial Bank of Buffalo vs. Sparrow*, 2 Denio, 97; *Hunt vs. Van Alstyne*, 25 Wend., 606; *Morris vs. People*, 3 Den., 392; *People vs. Chenango,* 4 Seld., 337; 2 Gill, R., 493. The legislature of New York is required to append a certificate to the enrolled bill, and that may be looked into. The court cannot go behind the bill to the journals. But see Assembly Journal, 1849, 360; id. 1853, 830; Senate id., 700.

6. The bill charges that the tax levied and sought to be collected by defendants, was illegal and void—that by the law of '54, the complainant was exempt from the tax imposed. The demurrer admits the bill to be true; but if true, that the case made out is not such as entitles the complainant to the relief prayed for; and why? *Because the law is unconstitutional.* This is the issue: it is a question of law to be determined upon principle and authority—upon the construction of the law and application of adjudicated cases, and not by the introduction of evidence to sustain an issue of fact. No such issues are tried by this court, on appeal or writ of error.

7. If the supreme court can look into the journals of the legislature to determine the validity of a law, then, most assuredly, they have the right to go behind the journals to ascertain whether the legislature were legally organized. This would render all statute laws uncertain, and result in confusion. It is a well known fact that the journals of our legislature are very unreliable; that they are seldom read and corrected, but when the clerk begins to read some member moves to dispense with the further reading. The clerk is liable to make mistakes, and often does, and the printer likewise. The journal of the Senate in question: Where is the authentic journal? Is it the printed book, printed without examination, proof, or certificate to authenticate it? Is it the journal in the office of the Secretary of State, purporting to be the journal of the senate, in the handwriting of its clerk? See the discrepancies between that and the printed book, and will the court declare a law unconstitutional upon such evidence?

8. The journals are no part of the laws; but they are read by the defense, or sought to be, to impeach the law.

9. In construing a statute, we look into that alone for its true meaning; or if we consult other authorities whether judicial decisions or history, or the journals of the body that passed it, we do so to aid us in getting at a correct interpretation, to give

Knowlton vs. Supervisors of Rock County.

to it that force and effect intended by its makers. We do not use them as evidence of any *fact* to sustain or impeach the law. That stands or falls on its own intrinsic merits. So if we wish to ascertain the constitutionality of a law, we try it by the constitution, and nothing *else*. We look to see if it contains anything prohibited by that instrument. If we consult authorities, it is to aid in giving a construction, and in making the application; and such is the only manner in which the constitutionality of a law is determined. Now to go behind the law and receive proof as to the prerequisites of the passage of the law, disregarding the signature of the Governor, and of the presiding officer of each branch of the legislature, and the certificate of the Secretary of State, all of them sworn officers, and to impeach the whole by the journal, would upset all statute law. The journals, if the defendants position is correct, show that the state tax for 1853, and the state tax for this year, are unconstitutional and void; how many more I have not examined.

10. If the court will allow an inquiry into facts of this nature, it should be done only after plea or answer, that proof might be presented on both sides. On demurrer it cannot be fairly tried. Will the court take judicial notice of the journal? Will they take judicial notice that there is no journal, or if a journal, that it is so imperfect as to be utterly unreliable.

11. This is not a law which imposes, continues or renews a tax within the intent and meaning of Art. VIII, § 8, of the constitution. *The People vs. Morris,* 13 Wend, 325; *Warner vs. Beers,* 23 Wend., 103.

12. The constitution provides, § 1, Art. VIII, " The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." What is meant by the uniformity here required? Is it that all property within this state shall be assessed in the same manner and pay an equal amount of taxes? or that all property within this state shall pay an *ad valorem* tax? Or that there shall be but one tax, and that extending throughout the state? Or that some species of property may be designated, upon which shall be imposed all taxes of the state by one, uniform rule?

13. The power of taxation has been compared to that of eminent domain, and it is said as regards the question before us, that they are substantially the same. These powers exist in the same sovereignty, but their exercise involves different principles; property may be appropriated for public purposes, but it must be paid for. Taxes are assessed on property for the support of government by a legislative act. *State Bank of Ohio vs. Knoop,* 16 Howard, 369.

14. The uniform *ad valorem* tax insisted on by appellants would require that state, county, town and local taxes should be the same throughout the state; yet the legislature discriminates as to property which shall be taxed, but imposes local taxes and confers taxing power upon local corporations for local purposes, not only for their government and security, but for local policy. *Chancy vs. Hoover,* 9 B. Mon., 338; *Talbot vs. Dent,* id., 528; *Slack vs. Maysville & Lexington R. R. Co.,* 13 B. Mon., 16; *The City of Lexington vs. McQuillan's Heirs,* 9 Dana, 616; *The People vs. Mayor of Brooklyn,* 4 Coms., 419; *Shaw vs. Dennis,* 5 Gilman R., 405.

15. In the exercise of this power the legislature has vested in incorporated cities

and villages the power to tax for the grading and paving of streets and side walks, and the abating of nuisances, &c.; sometimes fixing the mode of assessment, sometimes leaving it for the corporation to fix; sometimes the tax is *ad valorem*, sometimes specific; sometimes it is in proportion to the length of front upon the street, sometimes in proportion to the benefit conferred; yet it is a tax within the meaning of the constitution, and the rule of uniformity is complied with; within the locality the same rule as to the same subject is adhered to. *The City of Lexington vs. Mc Quillan's Heirs*, 9 Dana, 516.

16. The Revised Statutes provide for a poll tax, which is a violation of the *ad valorem* rule and is unequal, and yet is clearly within the constitution, as it provides a uniform rule of capitation tax throughout the state. Rev. Stat., 171. In 1851 an act was passed taxing the sale of intoxicating drinks. Ses. Laws 1851, 153. A specific tax was laid upon goods sold at auction, by a law passed at the session of 1851, Ses. Laws, 283, which is still in force. By a statute passed in 1852 a tax is now laid by way of license upon hawkers and pedlers. Ses. Laws, 1852, chap. 386. All of which taxes are in violation of the *ad valorem* rule, and, as we contend, are yet *uniform* and strictly in compliance with the constitution.

17. The constitution of the United States provides that all duties, imposts and excises shall be uniform throughout the United States, yet there has not been a law passed since the adoption of that constitution, which did not provide for *ad valorem* duties upon some articles and specific duties upon others. The uniformity required is that duties, imposts and excises shall be laid to the same amount on the same article, in each state. See Luther Martin's Letter, 1 Vol. Elliot's Debates, 369.

18. The constitution of the United States also provides that Congress shall establish a uniform rule of naturalization. The act of the 29th of January, A. D., 1795, and every succeeding act provides different qualifications for different classes of foreigners; yet being the same as to that class throughout the United States, it is a uniform rule of naturalization, and complies with the constitution.

19. Taxes are sometimes laid upon lands according to quantity, without reference to soil or situation. At other times lands are divided into classes, with reference to quality, each of which is uniformly taxed. Sometimes they are taxed uniformly by the acre, whether cultivated or uncultivated, improved or unimproved. At other times they are taxed according to a permanent valuation; sometimes according to the mode of cultivation, without reference to the value; at other times according to their produce or supposed annual rent. At other times enclosed or cultivated lands are uniformly taxed, without reference to value or profit. This constitutional provision is intended to prevent these discordant and irreconcilable modes of taxation from being adopted as to the same article, used for the same purpose, in different parts of the State.

20. This construction of the constitution is most compatible with equality, as well as uniformity of taxation. See Report of Sec. of Treasury to Congress, Dec. 13, 1796, by Oliver Wolcott; Annals of Congress, 4 Congress, 2 Ses., 1796, 1797, pp. 2705-6-7; 5 Am. State Papers, 414, Finance 1.

21. In some states of the Union railways are exempt from taxation, upon princi-

Knowlton vs. Supervisors of Rock County.

ples of public policy, as in Massachusetts and Pensylvania; in others they are sub-ject to be taxed only as personal property; in others in the same manner as other property. Sometimes a peculiar rule of valuation is prescribed; sometimes not. In England railway companies are liable to be taxed or rated upon the annual value of the railway or the net income. Am. Railway cases, 355; The Tax Cases, 12 Gill and John., 118.

22. The taxing power may select its object of taxation, and this is generally regu-lated by the amount necessary to answer the purposes of the state and public policy. The construction of railways in this country is a desirable object and tends greatly to the wealth, commerce and prosperity of the state. To secure public confidence, inducements must be held out to capitalists to invest their funds; they must know the terms of the charter, the liabilities of the company, the rate of taxation and other privileges necessary to a successful rail road operation.

23. The law which the appellants seek to invalidate, tends to promote the public interest, and is uniform throughout the state, and complies with the rule required in the constitution.

[The following paper contains all the opinion of the court which has been written, except the order affirming the decree of the circuit court, and which has been dis_covered since the opinions in *Knowlton vs. Supervisors of Rock Co.* were written. —REP.]

*By the Court,* SMITH, J.

The imposition upon railroad property by the act of 1854, does not violate that pro-vision of the constitution of Wisconsin which provides a uniform rule of taxation, provided like property pertaining to railroads, or all property of that class is alike taxed, or alike exempt, as it appears to be.

If the act of 1854, having relation to this class of property was not passed in a con-stitutional manner, as it is claimed appears by the records or journals of the legislature, so by like evidence it would seem that the law by which the board of supervisors at-tempted to assess this property, was unconstitutionally passed, and admitting the premises, the injunction is proper, the bill covering such a case.

But the court do not think the law of 1854 does impose a *tax* within the mean-ing of the constitutional provisions, and therefore the law of 1854 is valid so far at least as the government is concerned. The state having exempted this class of property from any tax whatever, (except the one per cent.,) which it had the right to do; provided it exempted all property of the same class, uniformly, cannot be per-mitted to repudiate its own act and demand a levy under the general law, from the operation of which it had granted the exemption.