# THE ATTORNEY GENERAL *vs.* THE WINNEBAGO LAKE AND FOX RIVER PLANK ROAD CO.

### ALTERNATIVE WRIT OF MANDAMUS.

Heard February 18, 1860.]                    [Decided March 6, 1860.

## *Constitutional Law—Taxes—Railroads.*

An act of the legislature required plank and railroad companies to pay into the treasury of the state one per cent. of the gross earnings of their roads, which tax shall take the place and be in full of all taxes upon said roads, and the property and stock of the company: Held, that this act was a violation of § 1, Art. VIII, of the constitution, which requires that "the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe," and was void for that reason.

The constitution, requiring taxation to be *uniform*, requires also equality as to all the property taxed; and it is not complied with by dividing property into different classes, and preserving equality in each class of property, but fixing a different rate in the different classes; on the contrary, the rule of taxation must be general, and applicable to all taxable property alike.

The constitution designed to prevent discrimination in favor of one kind of property, and against others.

The rule of uniformity of "duties, &c., throughout the United States," required by the constitution of the United States, secures equality, as between the states, not as between different kinds of property; but the rule required by the constitution of Wisconsin secures equality between the different kinds of property.

The rule of uniformity required by the constitution, in taxation, does not prohibit the legislature from exempting from taxation such property as they shall see fit.

The one per cent. of the gross earnings of the plank and rail roads, required to be paid to the state, is a tax upon the road, within the meaning of the constitution, although not assessed upon the valuation of the roads. It is not a bonus for the right and privilege granted to construct and maintain the roads in this state. So the payment cannot be regarded as a sum paid for a license to do what might not legally be done without it, but its primary object is to raise revenue.

Under the power of granting license, the legislature cannot exempt one kind of property from full taxes, by its paying a less sum:

The case of *Knowlton vs. Supervisors of Rock Co.*, 9 Wis., 410, considered and approved.

The doctrine said to have been decided in the case of *The Milwaukee and Miss. R. R. Co. vs. the Supervisors of Waukesha*, considered and overruled.

The writ in this case was issued on the application of the Attorney General of the state, and set forth that for 2 years the respondent had entirely failed and neglected to make and return to the treasurer the statement of the gross earnings of the company's road, as required by law; and had also refused to pay into the treasury of the state, a sum equal to 1 per cent of the gross earnings of said plank road. That the company had received $30,000 a year, on which it ought to pay one per cent. That demand had been made upon the president and treasurer of the company to make the return, and pay the per centage, and they had refused. The writ then commanded them to make the statement, and also to pay the per centage on the gross earnings of the road.

The only question presented for the consideration of the court was, the constitutionality of sections 182 and 183, of chapter 18, Rev. Stat. No brief of the counsel has been furnished to the reporter, and only the constitution and the sections considered will be cited.

"Sec 1.   The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe."   Const., Art. VIII.

"Sec. 182 (R. S. chap. 18.)   The several railroad companies and plank road companies now organized, or hereafter organized in this state, and completed in whole or in part, and being operated or used, shall, on or before the tenth day of January in each year, make out and return, or cause to be made out and returned to the treasurer of this state, a true and just statement of the gross earnings of their respective roads for the preceeding year, up to the first day of January ;

which statement shall be verified by the affidavit of the secretary and treasurer of each respective company.

"Sec. 183. It shall be the duty of the said railroad companies and plank road companies to pay, or cause to be paid to the treasurer of the state, for the use of the state, on or before the tenth day of January in each year, a sum equal to one *per centum* of the gross earning of their respective roads so returned, which amount of tax shall take the place and be in full of all the taxes of every name and kind upon said roads, or other property belonging to said companies, or the stock held by individuals therein, and it shall not be lawful to levy or assess thereupon, any other or further assessment or tax for any purpose whatsoever; but when a railroad or plank road lies partly within this state, and partly in another state or territory, the company shall pay such proportion of one *per centum* upon the gross earnings of the whole road so returned, as the length of that portion of the road within this state, bears to the whole length of said road."

*James H. Howe,* Attorney General, for the state.

*Abbott, Gregory, & Pinney,* for the respondent.

*By the Court,* PAINE, J. In the case of *Knowlton vs. The Supervisors of Rock County,* 9 Wis., 410, the majority of this court held, that an act providing for the taxation of property outside of the recorded plat, in the city of Janesville, at a less rate than that by which the property within the plat was taxed, was in violation of the provision of the constitution, that the rule of taxation shall be uniform. It has been supposed that that decision rendered questionable the validity of the statute now in force in respect to the taxation of rail and plank road companies; and this application has been made for the purpose of determining whether, in the opinion of the court, this statute is within the principle established in that case. An alternative writ of mandamus was issued for the purpose of compelling the company to make the statement, and pay the tax provided for in sections 182 and 183, chap. 18, of the present Revised Statutes

The company, by its counsel, moved to quash the writ, and the only ground urged in support of the motion, was that these provisions are in violation of the constitutional rule of uniformity in taxation.

It may be that it would be a sufficient reason for granting the motion, that sections 184-5-6 of the same chapter, provide other specific remedies for the collection of this tax. But as no such point was made, we shall not consider it, but will dispose of the motion upon the point presented in the argument.

It is claimed at the outset, that the question has already been decided by this court, in the case of the *Milwaukee and Miss. R. R. Co. vs. The Supervisors of Waukesha*, which was decided several years ago, but in which there never was any opinion written. The same position was taken in *Knowlton vs. Supervisors of Rock Co.*; and it was there intimated in the opinion of the Chief Justice, that under the peculiar circumstances of that decision, not knowing the precise ground upon which it rested, nor the reasons of the court, we could hardly feel bound by it as an authority. Its effect, however, was at that time avoided by the fact that, according to the best information we had of it, the court held that the imposition upon the railroad was not a tax, within the meaning of the constitution. The source of that information was a letter written by one of the judges to one of the counsel in the case, stating the points decided. And it was there said that the court held: 1. That the amount required to be paid by the railroad company was not a tax; and that if it was a tax, the constitutional requirement of uniformity was complied with, inasmuch as all railroads were taxed alike. Mr. Justice COLE, however, who was then on the bench, places his decision upon the last ground, and does not understand that the court relied very strongly upon the first.

Even with this uncertainty, if that decision had constituted such a rule of property, that a departure from it now would unsettle entirely rights and titles acquired in accordance with it, I should deem it my duty to follow it, as we have followed the prior decisions of this court in regard to the constitutionality of the mill dam act, even though utterly in conflict with my own views. But it is common for all courts to review their own decisions, and their right and duty to do so, are well stated by this court in *Pratt vs. Brown*, 3 Wis., 603, where after alluding to the importance of the rule *stare decisis*, it is said : " But, at the same time, we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history of the liability to error, and the advantages of review." As a departure, therefore, from the decision in question, would only have the effect of subjecting all taxable property to a just equality in the burden, if the decision was subversive of that equality, in view of its peculiar circumstances, I deem it one eminently proper to be reconsidered.

If then it is held to have decided, that the law taxing rail and plank road companies, is a compliance with the constitutional requirement of a uniform rule, it was in this respect overruled by the case of *Knowlton vs. The Supervisors of Rock Co.* I shall not attempt to go again over the ground there discussed. But as the point was again argued and insisted on by the attorney general in this case, I will allude briefly to some of the positions taken by him. It was claimed that the construction there given to the word *uniform,* gave it the same effect as though the word *equal* had also been used. He conceded that if the constitution had required the rule to be *uniform and equal,* that then the legislature could not discriminate between different classes of property, and tax them at different rates; but claimed that the word " uniform" required equality, only in each class of property, but not as

between different classes. I can see no ground for such a distinction.

If a general rule applicable to all taxable property, is uniform, though taxing different classes at different rates, merely because each class is taxed at the same rate, then, by the same reasoning it would be equal, because each class would be equally taxed. It is very obvious that it would not be equal as between the different classes. But it is just as obvious that as between them it would not be uniform. The fallacy of the argument consists in taking the liberty of dividing the rule, when construing the word uniform, and considering the manner of taxing each class as the entire rule, without doing so in respect to the word equal. But there is no more authority for doing so in the one case, than there would be in the other, and none in either. The rule of taxation is a general rule, and is applicable to all taxable property. " Uniform" means, *unvariable, resembling itself at all times, conforming to one rule or mode.* It is very clear therefore that a rule taxing horses at one rate, cattle at another, and land at a third, would not be a uniform rule. The fact that all horses were taxed alike would not make it so, because the mode of taxing horses would be only a part of the rule. That part might be uniform with itself, but the moment a change was made to other property, there the rule changed, and the uniformity ceased. By any other construction there might be as many different modes and rates of taxation, as there may be classes of property, and yet the rule of taxation be uniform. A proposition which is a self-evident contradiction.

The object of the constitution was to produce justice and equality in the burden of taxation, as between property taxable at all. The evil to be prevented was, discrimination in favor of one kind of property and against others. This evil experience had shown was likely to arise. It was common for the owners of particular kinds of property to combine to

obtain special privileges for their class. It was not common for such discrimination to be made in favor of a part of a particular class against the rest of the same class. The construction I am contending against, would prevent only the latter kind of discrimination; which was so little likely to happen that it could scarcely be deemed to have been the evil aimed at by the constitution, while it would leave the other which was so much more likely to happen, and to be productive of much greater injustice, entirely unrestrained. Our construction, or rather, the plain language of the constitution without construction, secures as near as may be, justice and equality in the burdens of taxation. The other leaves room for the greatest injustice and inequality, and seems to consider the constitutional provision as designed only to secure a sort of ornamental uniformity in the parts of an unequal rule, without affording any substantial benefit or protection.

The fact that the provision of the constitution of the United States requiring " duties, imposts, &c., to be *uniform throughout the United States,*" has been held to allow discrimination between different kinds of property, does not at all impair the force of our position. A provision requiring uniformity has in view some circumstance or quality with reference to which it is to be determined. If color be the quality, several articles may be of a uniform color, though differing in other respects; and so of any other quality. The provision in the constitution of the United States was designed to secure uniformity *as between the states,* not as between different kinds of property. The language expressly indicates that intention. Judge Story in his commentaries, vol 2, p. 428, says the object was " to cut off all undue preferences of one state over another in the regulation of subjects affecting their common interests." Locality was the point as to which uniformity was required by this object, and uniformity in this respect was not inconsistent with discrimination

between different kinds of property. But the object of our constitution was to secure the same equality as between different kinds of taxable property, that the other designed to secure as between the states. And this can be attained only by a uniform rate. The same view of this provision is taken in the opinion of Justices Bartley and Ranney, in the case of *The Exchange Bank of Columbia vs. Hines,* 3 Ohio St. R., 1.

But it is said that if the constitution is construed as designed to secure equality in the burden of taxation, then no property can be exempted. This would be so if it required equality in the burdens, as between all the property in the state. But this is not required. It is required only in respect to the taxable property. The rule of taxation extends to that only. The same provision says that " taxes shall be levied on such property as the legislature shall prescribe." And this necessarily implies that they may exempt from taxation such property as they see fit. It cannot be denied that under this power of exemption, unjust enactments in respect to taxation might be made. But those who framed the constitution did not see fit to prevent such evils by depriving the legislature of the power. But they did provide that whatever property was made taxable at all, should be taxed by a uniform rule, which was designed to secure equality in the burden as between the different kinds of taxable property, but of course, not as between property taxable, and that not taxable. The majority of the court adhere therefore, without qualification, to the rule as stated in *Knowlton vs. The Supervisors of Rock County.*

The only remaining question is whether the imposition upon the plank road company is a tax within the meaning of the constitution. Upon this point the burden of proof would seem to rest upon those who maintain that it is not a tax. The law itself says it is a tax. It was first enacted in 1854, and constitutes chap. 84, General Laws of that year.

It is entitled, "An act taxing railroads and plank roads." Still, if from its nature it is something essentially different from a tax, a mere verbal inaccuracy of the statute in calling that a tax which is not one, ought not to govern in its construction.

I will examine, therefore, the several suggestions that were made for the purpose of distinguishing this from a tax. It was said : 1. That a tax implies an assessment upon a valuation, while this requires a specific sum without regard to valuation. It is true that an assessment on the valuation is the usual and general mode of imposing a tax. But it certainly is not essential, as in the absence of constitutional provisions, there may be capitation taxes, and specific taxation upon property. But although an assessment upon the valuation is the general mode of taxation in this state, and possibly the only mode by which the constitution can be complied with; yet if the legislature should attempt, in a particular case, to impose that which is essentially a tax, in a different mode, this difference in the mode would not prevent its being a tax, otherwise every specific departure from the general mode of taxation would furnish its own justification, and take itself out of the constitutional provision, on the ground that not being imposed as taxes generally are, it was not a tax.

There is certainly no room for the pretence that this is a *bonus* for the granting of the charter, the practice of requiring which, seems to have prevailed in some states. It applies by its terms to the rail and plank road companies previously organized, as well as to those thereafter to be organized. It certainly could not be a *bonus* for the charters previously granted ; and it is clear, that it was not designed as such with respect to subsequent ones. The distinction between such a *bonus* and tax, is well stated in the *Mayor, &c. of Baltimore vs. The Baltimore and Ohio Railroad Co.*, 6

6 Gill., 291–2, which was cited on behalf of the state, but which, we think, fully sustains the position that it is a tax. The *bonus* was there said to be the consideration required by the legislature, for the grant of the franchise; the tax something levied upon the franchise or its value, "after its creation," for the support of government. The amounts required by the act in question, are clearly of the latter, and not of the former character. Another distinction was that the *bonus* was "a mere proposal or offer of a bargain or contract by the legislature, which might be accepted or rejected, at the discretion of those to whom the offer was made." While the tax was absolute and imperative, leaving nothing to the discretion of the tax payer. Here, again, the burden imposed by the act in question, falls within the latter and not the former class, for it is required to be paid absolutely, and stringent remedies given for its enforcement.

The only other position taken was that this should be regarded as a sum paid for a license. But we are wholly unable to see how this can be maintained. It does not purport to be a license, it is not classed among licenses, various kinds of which are provided for in the statutes. It does not perform the functions of a license. A license is an authority granted to do that which the licensee might not legally do without it. And although the payment of money is frequently required for the license, yet its primary object is usually that of a police regulation, and not directly to raise a revenue. For this reason licensing has not been classed as an exercise of the taxing power. It is an exercise of the police power of the state, and is analogous to the requiring of a *bonus* for the granting of charters; the distinction between which and a tax, has been already alluded to.

We have no idea that the provision of the constitution requiring the rule of taxation to be uniform, was designed to, or does impose any restriction on the police power of the

legislature in granting licenses, for any thing that may in its nature be the subject matter of a license. But we do not think they could license the owners of a particular class of property to be exempt from the payment of full taxes on the payment of a less sum. That would obviously be no exercise of the police power, but could only be resorted to as a mere evasion of the constitutional rule of uniformity, and that is the only kind of a license into which this act taxing rail or plank roads can by any possibility be construed. It is not a license to exercise the rights granted by their charters, for that right the charters themselves give, and this act does not profess to give. It grants only the right to be exempt from all other taxation on the payment of a specific tax of one *per centum* of their gross earnings. The legislature did not call this a license, but honestly called it a tax, as it is beyond all question. And we cannot but feel that to attempt to impute to it the character of a license, would be a mere strained evasion of the constitution..

It was urged that rail and plank roads are of public importance, and that the public interest might be prejudiced by subjecting them to taxation for all purposes in the various districts through which they run. There may be great force in these suggestions. But if so, the remedy will be for the legislature to exempt their property, or such parts of it as they may see fit, leaving the balance, if any, to be taxed by the uniform rule by which all other property is taxed. It is not for the courts to furnish the remedy by swerving from the true construction of the constitution.

In connection with the prior decision of this court, we were referred to the practical construction of the legislature, and the general acquiescence therein; and it was urged that it would be productive of great injustice to those whose capital had been invested in view of that construction, to change it now. We are not unmindful, as already stated, of the force

of such arguments with respect to any rule of property, a change of which might unsettle entire rights acquired under it; but we cannot admit that they apply with equal force here. On the contrary, the only result of our decision will be to prevent any class of property, which may have sought to obtain exclusive privileges for itself, from succeeding in that attempt, and subjecting it to its equal share of the public burdens; a result as compatible with our sense of justice, as we believe it to be, with the obvious intention of the constitution.

The motion to quash is sustained.

COLE, J., Dissenting. I am not able to concur in the opinion which a majority of the court have pronounced in this case. The case itself presents for consideration precisely the same questions as were involved in the case of the *Milwaukee and Missisvippi R. R. Co. vs. The Board of Supervisors of Waukesha Co.*, decided by this court at the June Term, 1855, (see note to *Knowlton vs. Supervisors of Rock county*, 9 Wis., 431,) to wit : the validity of those provisions of our revenue law requiring the several rail road and plank road companies of the state to pay annually into the state treasury, one *per centum* of the gross earnings of their respective roads which are declared, shall be in lieu of all taxes that might otherwise have been imposed upon that class or description of property. The statute upon this subject will be found in chap. 74 of the General Laws of 1854, p. 92; and the same provisions have been incorporated in, and have become a part of chap. 18, R. S. 1859, sections 182, 183, 184, 185, and 186.

It is contended that these provisions of law are invalid, for the reason that they are at variance with the true spirit and meaning of section one, article eight, of the constitution, which reads : "The rule of taxation shall be uniform, and taxes

shall be levied upon such property as the legislature may prescribe."

In the case of *The Milwaukee and Mississippi R. R. Co. vs. the Board of Supervisors of Waukesha Co.,* this court held, after full argument and great deliberation, that chap. 74 of the laws of 1854, was constitutional, and gave judgment accordingly. A majority of the court now think otherwise, and consider the construction then given to the above cited provision of the constitution erroneous, and have proceeded to overrule that case. It is quite clear that the decisions of this court upon doubtful questions of statutory and constitutional law will not inspire a very high degree of public confidence, if as its members change, they shall feel at liberty to revise and over-rule former adjudications upon such questions, which have been made after the fullest discussion and examination. I should therefore feel some reluctance, in view of the nature of the questions involved, and of the circumstances of the case, in departing from a decision so well considered as that of *The Milwaukee and Mississippi R. R. Co. vs. The Board of Supervisors of Waukesha Co.,* even if subsequent reflection had raised some doubt in my mind as to the conclusions of the judgment in that case; for it is to be borne in mind that the legislature, in the recent revision of the statutes, retained the law of 1854, after it had been in operation some years, which would not have been done, if the system of taxation therein established, when applied to plank and railroad companies, had been considered unjust and unfair by the people of the state.

Besides, as a practical measure, it may be found difficult to frame a law which subjects this kind of property to the same mode of assessment and taxation, in the various towns and counties, as are applied to other property, and which will not be liable to a great deal of fraud and injustice in its administration. Where, for instance, under our present system,

will the rolling stock of a railroad, its depot buildings, engine houses, machine shops, wood, &c., be assessed and taxed? It is possible that the inconveniences here suggested would not be insurmountable, and that they might be overcome by some amendments to our present revenue law, but still it is undeniable that such inconveniences are serious, and do exist; and it is but fair to assume that the legislature, in passing the revenue law, took into consideration the difficulties of a system which should require the property of plank roads and railroads to be assessed and taxed in the same manner as other real and personal property, and therefore re-enacted the law of 1854, as being the best that could be devised upon this subject. But however this may be, I do not place my dissent from the majority opinion upon these grounds.

According to my understanding of section 1, Article 8, of the constitution, it was perfectly competent for the legislature to prescribe the manner of taxing railroad and plank road companies, and the principle of uniformity in taxation would not be violated so long as the same rule was applied to all of that class or description of property in the state.

In the case of *Knowlton vs. The Board of Supervisors of Rock County*, 9 Wis., 410, I gave my views upon the provision of the constitution under consideration. It is unnecessary to repeat what I then said as to the taxing power of the legislature, and the limitations placed upon it by this section. I only propose making a few observations upon the construction given this section by the majority of the court. And it appears to me, that the signal error in that construction is, in supposing that the object and intent of the section were to secure equality in the burdens of taxation, and that its design was to prevent the legislature from discriminating between the different kinds or classes of property, in imposing taxes. It is very apparent that the section consists of two clauses, which essentially modify and control each other.

The former clause should not be construed apart from the wide discretion given the legislature in the exercise of the taxing power, as contained in the second clause. The power of the legislature to discriminate between different classes of property is ample and unqualified in the latter clause of the section. The language is, taxes shall be "levied upon such property as the legislature shall prescribe." Now, if the rule of uniformity forbids discrimination in imposing taxes upon different classes of property, what effect can be given to this language? It seems to me that no force whatever is given to these words. By this construction, all property subject to taxation must be taxed in a uniform mode, according to its value. And if the object of the constitutional provision is to secure equality in the burden of taxation, and if it is levelled at the power of the legislature to discriminate, and say that all railroad property in the state shall be subject to a different rule of taxation from what is applied to other property, how can the legislature exempt any property from taxation?

I believe, since the origin of the state government, a certain amount of personal property, burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, and public property, used exclusively for any public purpose, have been exempt from taxation. If the rule of uniformity means equality in the burdens of taxation, how can these exemption laws be sustained? If I have personal property to the amount of two hundred dollars, is it equal to exempt that from the burdens of taxation, but impose those burdens upon my more fortunate neighbor, who has three hundred dollars worth of personal property? If I pay a state tax upon my homestead, does not equality require that the public or corporate property of the several counties, cities, villages, shool districts, and especially the property of the various literary, benevolent, charitable, scientific and religious societies, should also pay a state tax? And

if it is competent for the legislature, consistent with the principle of equality, to exempt all this property entirely from taxation, can it not say that it shall be subject to a greater or less rate of taxation than other property?

If the legislature can exempt railroads from taxation on the ground of public property or convenience, can it not say that they shall pay one *per centum* of the gross earning of their respective roads, into the state treasury in lieu of all taxes? Does not the greater power include the less? I have no doubt but it is entirely competent for the legislature to make these various exemptions; because I do not suppose the rule of uniformity necessarily implies equality in the burdens of taxation. In imposing taxes the legislature may classify property and the principle of uniformity will be preserved so long as the same class of property is subject to the same rule of taxation throughout the district for which the tax is raised. With any other construction, I am not able to give full and proper effect to the last clause of the section.

I think the motion to quash the writ in this case should be overruled.