HEARD APRIL TERM, 1874.

## STATE *vs.* COLUMBIA.

An ordinance of the city of Columbia imposing by way of license fees a tax on business and avocations, and discriminating as to the amounts to be paid for licenses by the different classes of persons subject to the tax: *Held* to be conformable to an Act of the Legislature authorizing the city to require all persons, companies and corporations engaged in business or avocations to take out licenses, and to impose a reasonable charge or tax for the same; and: *Held*, further, that neither the Act nor the ordinance was inhibited by any provision of the Constitution of the State.

A license fee for carrying on a lawful business or avocation—as, for instance, that of an incorporated bank—imposed by an ordinance of a city, is a tax, within the sense of Section 8, Article IX, of the Constitution of the State, providing that "the corporate authorities of * * * * * cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property."

Though, strictly speaking, license of a trade or calling is referable to the police power of municipal bodies, yet the granting of licenses has long been used for the purpose, and has become one of the customary modes of raising revenue.

The Legislature is not forbidden by the Constitution from empowering municipal corporations to impose taxes on business and avocations, and to fix a different rate for each distinct class of persons subject to the tax.

A tax on business and avocations fixing a different rate of taxation for each distinct business or avocation is not in conflict with the provision of the Constitution requiring all taxes to be "uniform with respect to persons and property."

VOL. VI—1

State *vs.* Columbia,

The sense of the term "uniform with respect to persons or property," as used in Section 8, Article IX, of the Constitution, stated and explained.

The business of a bank incorporated by the State is not exempt from municipal taxation.

That the bank has paid a license fee imposed as a tax by the State for its own purposes does not exempt it from liability for municipal taxation imposed in the same way.

A tax of $200 on the business of banks imposed by the city of Columbia: *Held* not to be unreasonable within the sense of an Act of the Legislature authorizing the city to impose a "reasonable charge or tax."

A power to "assess and collect taxes" implies, in this State, the power to enforce collection by execution.

BEFORE COOKE, J., AT COLUMBIA, AUGUST, 1873.

This was a suggestion by the Citizens' Savings Bank and the South Carolina Bank and Trust Company, as relators, against the city of Columbia and Jesse E. Dent, Sheriff of Richland County, praying for a writ of prohibition to restrain the enforcement of certain executions issued by the city against the relators for the collection of license fees.

The case was this: By an Act of the Legislature, approved March 2, 1871, (14 Stat., 572,) the Mayor and Aldermen of the city of Columbia are "empowered to require all persons, companies and corporations now engaged, or who may hereafter become engaged, in business or avocations of any kind whatever, within the limits of the city of Columbia, to take out a license from the Mayor and Aldermen of the said city, who are hereby authorized to impose a reasonable charge or tax for the conduct of the same." And under the power thus conferred, the city of Columbia, on the 23d December, 1872, passed an ordinance entitled "An ordinance to regulate licenses for the year 1873," whereby it was declared "that every person, firm, company or corporation engaged in, or intending to be engaged in, any trade, business or profession hereinafter mentioned shall obtain a license therefor in manner provided;" and then, after declaring that every such person, firm, &c., shall register his or her name or style, imposing a penalty of $40 for failure to register, and prescribing the manner of obtaining licenses, it proceeded to fix the rates to be paid for the different classes of licenses[a] in manner following: "Astrologers and clairvoyants, $100; apothecaries, retail, $25; architects or surveyors, $25; auctioneers, $100; * * * * * * attorneys at law, $25; banks and bankers, $200; billiard, bagatelle or other gaming tables, for the first table, $50, and for every additional table in the same establishment, $25," and so on, naming some eighty or ninety

trades, professions and avocations, and fixing the sum to be paid for each distinct class,—"dealers, retail, in goods, wares and merchandise" being classified according to the amounts of their annual sales, and "boarding houses" and "hotels" according to the number of boarders or guests they could accommodate.

The relators are banks chartered by the State and doing business within the limits of the city of Columbia. They alleged that they had not paid the license fees of $200 prescribed by the ordinance for "banks and bankers;" that executions therefor had been issued and placed in the hands of the Sheriff, who threatens to levy the amounts thereof by distress and sale of relators' goods and chattels. The grounds of the application for a writ of prohibition are stated in the judgment of this Court.

The case was heard by His Honor Judge Cooke, (the Judge of the Circuit being absent from the State,) who made an order that a writ of prohibition do issue in accordance with the prayer of the suggestion.

The city of Columbia appealed.

*Tradewell*, City Attorney, with whom was *C. D. Melton*, for appellant, cited *Fletcher* vs. *Peck*, 6 Cr., 87; *Ex Parte McCullom*, 1 Cowen, 564; *Morris* vs. *People*, 3 Denis, 381; *Cohen* vs. *Hoff*, 1 Tr., 637; *License Cases*, 5 Wall, 471; *Hodgson* vs. *New Orleans*, 21 La. Ann., 301; *Meriam* vs. *New Orleans*, 14 La. Ann., 318; *Fletcher* vs. *Oliver*, 25 Ark., 289; *Bruce* vs. *Hodges*, 14 Rich., 256; *State* vs. *Hayne*, 4 S. C., 403; Dillon on Mun. Corp., §§ 291, 587, 594, 651, 653, 656; Cooley on Con. Lim., 479, 390; *Mason* vs. *Trustees*, 4 Bush, Ky., 406; *Gilkeson* vs. *Justices*, 13 Grat., 577; *Gilman* vs. *Sheboygan*, 2 Black., 510; *Nashville* vs. *Althorp*, 5 Cold., 554; *Slaughter* vs. *Commonwealth*, 13 Grat., 767; *Knowlton* vs. *Supervisors*, 9 Wis., 410; Con., Art. IX, § 8, and other parts of the Constitution.

*Bachman & Youmans*, contra, cited 3 Kent, 360; *Pope* vs. *Commissioners*, 12 Rich., 410; Dillon on Mun. Corp., §§ 610, 284, 302, 605, 291, 609; Cooley on Con. Lim., 198, 200, 203, 211, 514, 518, 502; 9 Pick., 414; 4 Mass., 145, 473; 3 Story, 69; *Savannah* vs. *Hartridge*, 8 Ga., 23; *Kyle* vs. *Malin*, 8 Ind., 34, 37; *Richmond* vs. *Daniel*, 14 Grat., 387; *Railroad* vs. *Alexander*, 17 Grat., 176; Abb. Dig. Law of Corp., 492; *Thorpe* vs. *Railroad*, 27 Vt., 149;

*Bank* vs. *Hines*, 3 Ohio, 1; *Weeks* vs. *Milwaukie*, 10 Wis., 282; *Sanderson* vs. *Cross*, 10 Wis., 282; Ang. & A. on Corp., §§ 377, 378; *Savannah* vs. *Charleton*, 36 Ga., 460; *Ex Parte Garland*, 4 Wall, 379; *Paxon* vs. *Sweet*, 1 Green., 196; *Commissioners* vs. *Gas Company*, 12 Penn., 318; *Kip* vs. *Patterson*, 2 Dutch, 298; Broom's Leg. Max., 278; 23 N. H., 430; *Ashville* vs. *Means*, 7 Ired., 406; *Mays* vs. *Cincinnati*, 10 Ohio, 273; *Covington* vs. *Southgate*, 15 B. Mon., 498; *Baker* vs. *Cincinnati*, 11 Ohio, 504; *McCullough* vs. *Daniel*, Harp. Eq., 255; *Walker* vs. *Pinson*, 12 Rich. Eq., 452, and other cases, and the Articles and Sections of the Constitution and Acts of Assembly relating to the case.

Sept. 23, 1874. The opinion of the Court was delivered by

WILLARD, A. J. The relators allege that the ordinance of the city of Columbia imposing upon them, as bankers, payment of a sum of money by way of a license is invalid, and they ask that the respondents be restrained from enforcing such ordinance by a writ of prohibition issued out of this Court. The propositions advanced by the relators in support of this position resolve themselves into the following:

1. That, as an incorporated company, transacting banking business under a charter from the Legislature, they are not liable to pay any corporate tax for carrying on such business.

2. That they have paid the tax imposed by the Act entitled "An Act to provide for a general license law," approved March 13, 1872.

3. That the ordinance, considered as a means of raising revenue, is not "taxation" in the sense of the enactment conferring power to tax on the city corporation.

4. That, considered as a means of imposing a tax, such tax is not equal and uniform in respect to persons and property.

5. That the charge imposed is not a reasonable charge or tax.

In order to determine the force of these various propositions, it is requisite to inquire: *First.* Whether the enactment of the ordinance in question is to be regarded as the exercise of the power of imposing taxes; and, *Second.* Whether the charges imposed on the relators by the ordinance is equal and uniform in respect of persons and property.

The authority under which the respondents acted in the passage of the ordinance in question is contained in Section 8, Article IX, of the Constitution, which is as follows: "The corporate authorities of Counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, such tax to be uniform in respect to persons and property within the jurisdiction of the body imposing the same;" and in Section 8 of an Act amending the charter of Columbia, approved March 2, 1871, (14 Stat., 572,) as follows: "That the said Mayor and Aldermen are hereby empowered to require all persons, companies and corporations now engaged, or who hereafter may be engaged, in business or avocations of any kind whatever, within the limits of the city of Columbia, to take out a license from the Mayor and Aldermen of the said city, who are hereby authorized to impose a reasonable charge or tax for the conduct of the same."

It is evident that the ordinance in question imposing a tax by way of license upon the relators on account of their business as bankers is in pursuance of the authority conferred by the statute just quoted, unless the relators establish their proposition that it is not reasonable. This proposition will be hereafter examined; and, in the meantime, the reasonableness of the charge will be assumed for the purpose of examining the other branches of the argument.

The question before us, then, is one of conflict between the grant of authority by the Act and the provisions of the Constitution already quoted.

We come now to the question whether the enactment of the ordinance is to be regarded as the exercise of the power of imposing taxes. The constitutional authority extends, in terms, to power "to assess and collect taxes for corporate purposes." If the charge imposed cannot be regarded as a tax in the sense in which that term is employed in the Constitution, then the respondents would have to look to some other source of authority for their action than this Section of the Constitution.

The relators allege that the charge imposed upon them cannot be considered a tax in the sense of the Constitution. They contend that power to enact a license and impose a license fee necessarily implies a right to control the business in respect of which the license fee is demanded, either by prohibiting its exercise or permitting such exercise only upon conditions imposed according to the discretion of the city authorities.

. Their proposition that the authority under which they conduct their business is derived directly from the Legislature through their charter of incorporation depends for its force upon the idea just presented of the nature of licenses and license fees.

Strictly speaking, a license of a trade or calling by a municipal corporation is referable to the police power possessed by such bodies, and implies authority to prohibit the exercise of such business, except upon conditions having reference to some end of police regulation. In its simplest form of exercise, as where employed solely for the purpose of regulating avocations of a class tending to disturb public order, health or morality, it is a power totally distinct from that of imposing taxes for the purpose of raising revenue.

It has, however, been long employed for the purpose of imposing, on a class of avocations to which the exercise of that power particularly relates, embracing places of public entertainment and amusement, taxation for the purpose of revenue of an extraordinary character, based upon the idea that avocations of that class should contribute specially to the support of the government in excess of the burdens borne by the productive industries. In this way it became one of the customary modes of raising revenue. The extension of this mode of raising revenue beyond the sphere of avocations to which the power of police regulation properly related, where circumstances of a peculiar nature rendered it requisite that each particular avocation should have its own rate of taxation, was natural where taxation had divided itself into two methods, the one embracing those subjects of taxation that are capable of being reached by means of an uniform rate, and the other such as could be treated in no other way than by subdivision into distinct classes and imposing a separate rate on each of such classes. Avocations of the class to which the power of public regulation properly relates naturally fall within the class of subjects of taxation last named, and the license, as a form of collecting special taxes, has been frequently extended to embrace all subjects of taxation calling for special rates of taxation.

The law, always looking rather to substance than to names in fixing the nature of an imposition by way of license, looks directly to the end in view. If it finds that end to be a regulation tending to preserve public order, health or morality, it adjudges accordingly, applying the rules governing the exercise of the police power of the community; if, on the other hand, it finds that the object in view is

the requisition of revenue exclusively, it applies the rules intended to regulate the taxing power.

Under this view, we must look into the ordinance and the statute on which it is founded in order to ascertain whether the end and object was the imposition of taxation, or of some different character.

The views just presented will be found fully carried out in *United States* vs. *Vassar*, (5 Wallace, 462,) *Purvear* vs. *Massachusetts*, (5 Wallace, 475,) and *New York* vs. *Railroad*, (32 N. Y., 261.)

The statute under which the ordinance in question was passed uses the words "charge" or "tax" as descriptive of the nature of the imposition which the city government was authorized to make on the various trades and avocations carried on within its corporate limits. This expression, coupled with the fact that no other end than that of raising revenue for the support of the city government is disclosed in the statute, leads to the conclusion that the power intended to be conferred on the corporation was that of taxation.

The ordinance is equally clear on the subject. It does not subject the persons engaged in the various avocations to the performance of any other duty than that of paying the license fee fixed by the ordinance, nor does it impose any penalty or restriction whatever in respect of such avocation other than such as relates to the collection of such license fee. This view makes it clear that the ordinance intended exclusively the exercise of the taxing power.

It appears that the ordinance is to be regarded as an exercise of the taxing power, and as such its validity is to be determined by the rules and regulations governing the exercise of the power of imposing taxes.

In the case of *State* vs. *Hayne*, (4 S. C., 403,) this Court held that a tax upon business and avocations was a legitimate mode of exercising the taxing power, and that in the absence of constitutional limitations the Legislature could properly fix a separate rate for each description of avocation embraced. We also held that the Constitution of this State permitted taxation of that class. It must be held, therefore, that the Legislature had power to authorize the imposition of a tax on avocations and business by a municipal corporation, and to confer on such bodies power to fix a separate rate for each distinct class of the subjects of taxation embraced within it, unless the language of the Constitution, quoted above, is to be construed as rendering it imperative, that a single rate should be applied to all such subjects of taxation equally.

We come, at this point, to the examination of the second question suggested above, namely: Whether the charge imposed on the relators, by the ordinance, is "uniform in respect of persons and property."

This question arises under the clause of the Constitution already quoted, and is specially applied to local and municipal taxation. The provisions of the Constitution that such taxes shall be "uniform in respect to persons and property within the jurisdiction of the body imposing the same" is clearly a limitation on all kinds and modes of taxation that may be resorted to by local and municipal bodies, and as such is the test of the validity of the tax under consideration.

It may be observed that the contrary would be the conclusion if the provision was to be so construed as to apply only to taxes strictly personal and taxes upon property. That such was not the intention is deducible from the fact that a strictly personal tax is identical with a poll tax, which municipal bodies are excluded from imposing.—Const., Art. 9, § 2. The direct sense of the provision is that all taxes shall have an uniform operation as affecting the persons and property to which they relate. In this sense, taxes upon avocations and business would be equally included and would be compelled to conform to the general rule. There is no sound reason to be derived either from the language of the Constitution or from the nature of the subject matter of which it treats for departing from this direct interpretation of the terms used. If equality and uniformity as the rule of taxation are desirable in the case of a poll tax, or a tax on property as such, it is equally desirable that it should apply to taxation on avocations and business.

The true operation and effect, therefore, of the provision under examination is to prevent discrimination among individuals liable to taxation on personal grounds, or as it regards the right to have all visible and tangible property taxed according to its value.

Every tax imposed under our tax laws involves a person by whom the burden is to be borne, a subject of taxation, and a sum or rate to be paid by such person in respect of such subject of taxation.

It is, therefore, to be considered whether the tax in question makes an improper discrimination as it regards the different individuals or classes of individuals affected by it, or whether it in

effect taxes property without regard to the principle of applying an uniform rate according to value.

An improper discrimination as it regards the persons upon whom the tax is imposed, is one that does not arise from the nature of the subject matter in respect of which he is taxed, but from something that characterizes the individual as such, apart from all consideration of the nature and situation of the thing in respect of which the taxation is imposed. Where such a discrimination exists, it would be possible that two persons taxed in respect of the same subject matter might be subjected to the payment of unequal sums. Where, however, the law is so framed that the amount of taxation imposed on account of a particular subject of taxation cannot vary by whomsoever it is to be paid, the law cannot be said to be unequal and without uniformity as it respects persons.

The ordinance in question does not make any personal distinctions.

It divides the various avocations and business into separate classes and descriptions and affixes a rate to each; but all persons within the territorial jurisdiction following such avocations or business are subjected to like taxation.

Nor does the ordinance violate the principle of taxing property according to value according to an uniform rate. Had it increased or decreased the amount of taxation due from any person on account of his avocation or business according to the quantity or value of property held by such person or employed in his business when the amount of property was not the proper standard for the measure of the value of such business, it might be proper to inquire whether such taxation did not cover a kind of taxation on property not permitted by our Constitution. But such does not appear to be the case. The tax imposed upon the relators is not of that character, nor does it appear that they are subjected to any increased sum or rate of taxation by reason of any improper discrimination allowed by the ordinance to any person or corporation other than the relators.

The foregoing views are abundantly sustained by numerous well-considered and harmonious authorities. In *Mirriam* vs. *New Orleans*, (14 La. Ann., 318,) it was held that a requirement that all taxes should be equal and uniform was not violated by an ordinance taxing keepers of billiard saloons according to the number of tables employed in such business.

A similar feature exists in the ordinance in question. The number of billiard tables employed is not an improper measure of the amount and value of the business done, and it cannot be regarded as virtually a tax on the tables considered as property.

So in *Hodgson* vs. *New Orleans,* (21 La. Ann., 301,) the number of warehouses employed by a warehouseman being the measure of the tax imposed, it was held to be uniform and equal. This, too, was a legitimate mode of measuring the extent and value of the business as such.

*Fletcher* vs. *Oliver* (25 Ark., 289,) affords an instance of the violation of the rule of equality and uniformity, where a discrimination was made between resident and non-resident property holders.

*Mason* vs. *Trustees* (4 Bush Ky., 406,) and *Nashville* vs. *Althorpe* (5 Cold. Tenn., 354,) also illustrate the nature of personal discriminations in accordance with the view just advanced.

In *Attorney General* vs. *Plank Road,* (11 Wis., 35,) Judge Paine discussed with great clearness the sense of the terms "equal" and "uniform" as applied to taxation and throws much light upon the subject.

In *Bank* vs. *Hines,* (3 Ohio, 1,) Chief Justice Bartley gives a full and clear definition of the terms "equal" and "uniform," as applied to property taxation.

An examination of the principles upon which the foregoing cases rest will show that the conclusions stated above are in harmony with the views that have been elicited in the various States where questions involving these principles have arisen for adjudication.

We must therefore conclude that the tax imposed by the ordinance in question is not obnoxious to the clause of the Constitution imposing limits upon municipal taxation.

The points of objection made to the ordinance will next be separately considered. The objection that because the relators are a chartered corporation they are not subject to this form of taxation depends on the idea that the license intended by the ordinance is an attempt to control their general right of transacting banking business, and therefore in conflict with their charter conferring that right. This, as we have seen, is not the correct view of the ordinance. As a measure of taxation, the relators are equally subject to its provisions with all other persons, natural or artificial.

Nor does the payment of the license tax imposed by the government of the State relieve them from the necessity of paying local taxes.

The only objection not already disposed of is that the tax in question is unreasonable. No ground appears for holding either that the ordinance as a whole is an unreasonable exercise of the taxing power conferred upon the city corporation or that the particular sum imposed in respect of the business carried on by the relators is unreasonable. The mode of taxation adopted in this case, including the fixing of a separate rate for each distinct avocation and kind of business, is not in itself unreasonable, as we have already seen. Nor can we say, from anything disclosed by the ordinance or pleadings, either that the aggregate sum or rate imposed by the ordinance is in excess of what is reasonably needed for the support of the city government or that it is in excess of what should be borne by the class of subjects of taxation to which the ordinance applies; nor can we say, from anything that appears, that any rule or principle of uniformity has been violated in fixing the proportionate part of the whole sum or rate that should be borne by the relators as bankers. It is not therefore necessary to define what was intended by limiting the corporation to a reasonable exercise of the powers conferred, there being nothing in the case putting the question of reasonableness at issue.

The remaining ground advanced by the relators for the granting of the prohibition is an alleged want of power on the part of the respondents to issue process for the collection of taxes.

The power conferred on the respondents, as we have seen, is to assess and collect taxes. This implies more than the power to sue for such taxes, and includes the right to use and employ whatever remedies have been usually employed for that purpose.

The practice of issuing tax executions for the collection of taxes existed at the adoption of the Constitution, and had long existed prior to that time, (*State* vs. *Hodges*, 14 Rich., 256,) and must be deemed embraced by the authority to "collect" conferred by that instrument.

The motion of the relators should be denied.

*Moses*, C. J., and *Wright*, A. J., concurred.